UNITED STATES of America ex rel.
Miguel FELICIANO, Petitioner,

v.

Michael P. LANE, et al., Respondents.

No. 81 C 6531.

United States District Court,
N. D. Illinois, E. D.

Sept. 15, 1982.

Elizabeth Landes, Jenner & Block, Chicago, Ill., for petitioner.

Thomas E. Holum, Asst. Atty. Gen., Chicago, Ill., for respondents.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Miguel Feliciano filed this petition for a writ of habeas corpus seeking

review of his state conviction for murder, burglary and robbery. He was sentenced to 20 to 60 years on the murder charge and 6 to 20 years on the burglary and robbery charges, with the sentences to run concurrently.[1] Feliciano's conviction was affirmed by the Illinois Appellate Court, *People v. Feliciano,* 87 Ill.App.3d 1196, 47 Ill. Dec. 272, 414 N.E.2d 1388, consolidated (1st Dist. 1980), and the Illinois Supreme Court has denied leave to appeal. A writ of certiorari has been denied by the United States Supreme Court.

Presently before this Court is respondent's motion for summary judgment on Feliciano's petition.[2] The petition is based on two interrelated grounds: (1) that Feliciano was convicted on the basis of an involuntary confession and (2) that he was denied effective assistance of counsel because his attorney at trial did not move to suppress the allegedly coerced confession. The crucial question for our purposes is whether Feliciano during his pretrial interrogation in fact invoked his fifth amendment right to remain silent. For this reason, the Court conducted an evidentiary hearing to fully explore all the pertinent facts surrounding Feliciano's interrogation.

Having carefully considered all the relevant evidence, including that adduced at the evidentiary hearing, the Court finds that Feliciano did not invoke his right to remain silent, and that the assistant state's attorney who interrogated the petitioner did not abuse his fifth amendment privileges. Respondent's motion for summary judgment, therefore, will be granted.

## I.

### Facts of the Case

Miguel Feliciano and Ray Rogers were convicted in separate trials of the murder and robbery of Sarah Schuster, an elderly resident of Chicago, and the burglary of her apartment. The substance of Feliciano's confession was that on the evening of the murder Feliciano and Rogers entered Mrs. Schuster's apartment on the pretense of helping her fix a broken door lock. Once in the apartment, Rogers forced Mrs. Schuster onto a bed and directed Feliciano to tie her feet while Rogers bound her hands and gagged her. While Rogers searched the bedroom for money, Feliciano went into the apartment hallway. Attempting to hurry Rogers, Feliciano told him he was going to their car and would only wait fifteen minutes. Rogers came to the car within that time and both men proceeded to Feliciano's apartment where they divided the money Rogers had found in Mrs. Schuster's apartment. Feliciano's share of the loot was approximately $120. Mrs. Schuster died of asphyxiation caused by the gagging.

At approximately 3:00 a. m. on September 15, 1977, Feliciano was arrested at his home and taken to a police station for questioning. He was given *Miranda* warnings both upon arrest and again at the police station. At approximately 4:00 a. m., Feliciano spoke "off the record" with Cook County Assistant State's Attorney Jeffrey Singer. He told Singer of his participation in the Schuster robbery and agreed to take police to a location where Rogers could be found. After he directed the police to Rogers, Feliciano was returned to the police station, where Singer requested that Feliciano tell him again about the robbery, only this time it would be "on the record." Feliciano agreed and a court reporter was summoned.

The transcribed questioning of Feliciano began at 6:05 a. m. Singer commenced by again giving the *Miranda* warnings to Feliciano. Accordingly, Singer advised Feliciano of his right to remain silent, of the government's right to use his statements against him, of his right to have an attorney present and of his right to have an attorney appointed for him. Singer's warnings, however, did not include a specific statement that Feliciano could terminate the questioning at any time. Immediately after these

---

1. Feliciano is currently an inmate of the Stateville Correctional Center in Joliet, Illinois.

2. Respondent's alternative motion to dismiss will be considered as a motion for summary judgment for the purposes of this decision.

warnings, the following conversation took place:

> [Singer] Q. Knowing these rights that I have so advised you of, do you still wish to answer inquiries that I will pose to you?
>
> [Feliciano] A. No.
>
> Q. Do you wish to answer any of the questions that I will pose to you?
>
> A. Oh, I'll answer all the questions.
>
> Q. You'll answer all the questions?
>
> A. Yeah.[3]

The narrow questions presented for this Court are: (1) whether *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires an explicit warning that an arrestee can terminate questioning at any time, and (2) whether Feliciano, as a matter of fact, intended to terminate questioning and invoke his right to remain silent.[4]

## II.

### Findings and Conclusions of the Court

The United States Supreme Court established in *Miranda* that: "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473–74, 86 S.Ct. at 1627. As petitioner concedes, the Supreme Court has never required *Miranda* warnings to include a separate explicit statement that questioning may be halted at any time.[5]

■ A suspect must be effectively apprised of his constitutional rights before he can be deemed to have waived them. *Michigan v. Mosley,* 423 U.S. 96, 103, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). In the instant cause, it is apparent that Feliciano was repeatedly told of his right to remain silent. During the 6:05 a. m. interrogation in question, he was asked three times whether he understood that he did not have to answer any questions. He replied in the affirmative each time. All three questions occurred at the very outset of the interrogation. Feliciano stated later during the interrogation that he had been apprised of his rights earlier that evening. Corroborating this statement is the testimony of the arresting officer at the evidentiary hearing that Feliciano had been given *Miranda* warnings upon arrest, and on two later occasions by Singer. The officer further testified that Feliciano indicated he understood these rights.

■ For the foregoing reasons, we find that Miguel Feliciano was effectively informed of his constitutional rights before the interrogation in question. While it is always the better procedure to make every effort to insure that a suspect understands his rights, the absence of a separate statement informing a suspect of his right to terminate questioning does not violate the *Miranda* doctrine.

Having concluded that Feliciano was effectively apprised of his rights, we must determine whether he intended to exercise these rights by his response of "No" to Singer's question "... do you still wish to answer inquiries that I will pose to you?" Further, even if Feliciano did not intend to invoke his right to remain silent, we must determine whether Singer was required to cease questioning once he received an apparently negative response.

Respondent asserts that Feliciano simply did not understand the word "inquiries."[6]

---

3. Transcript of Statement of Miguel Feliciano, Sept. 15, 1977, at 2.

4. Petitioner's argument that he was denied effective assistance of counsel is dependent upon the resolution of this question. If Feliciano did not invoke his fifth amendment privilege, then his trial counsel cannot be faulted for failing to move to suppress an otherwise proper confession.

5. Both Singer and the arresting officer testified it was their habit to include such a statement but they had no independent recollection of whether such a statement was made to Feliciano during the evening in question, prior to the transcribed interrogation.

6. As insight on this matter, the record reveals that Feliciano dropped out of school in the seventh grade at age sixteen. Although Feliciano was born in this country and has always lived in the United States, and although he

When the question was rephrased in more basic vocabulary, using the word "questions" instead of "inquiries," Feliciano understood and confirmed his desire to make a statement and waive his right to remain silent. Feliciano now contends he understood the word "inquiries," intended to invoke his right to remain silent, and changed his answer on the second exchange out of fear of the consequences if he did not cooperate with Singer.

■ Petitioner's contention that his affirmative answer to Singer's rephrasing of the question was the result of coercion is not tenable. Feliciano maintains that the coercion came in the form of an emotional, threatening outburst by Singer in which he paced the room and "made faces" at Feliciano. Petitioner contends that from these actions he could tell what was in Singer's mind—that Singer wanted "to take me back to the room and do some kind of physical force to make me talk."[7] Feliciano's testimony as to Singer's actions and his own reactions to Singer following the apparently negative response do not comport with his further testimony that no time elapsed between his answer of "No" and Singer's next question. Rather, it is far more probable that Feliciano's limited education has resulted in a restricted vocabulary.[8] Feliciano had shown every indication of cooperation prior to this statement. Once the word "questions" was substituted for the word "inquiries," he again showed complete cooperation. The Court finds, therefore, that Feliciano did not intend to invoke his right to remain silent with his initial response of "No."

Petitioner asserts, however, that once an apparently negative response was uttered, Singer had a duty, under the cases interpreting *Miranda,* to cease questioning and not resume interrogation unless he gave Feliciano another set of *Miranda* warnings. Petitioner argues that, as the Seventh Circuit emphasized in *United States v. Crisp,* 435 F.2d 354 (7th Cir. 1970), *cert. denied,* 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116 (1971), once the privilege of the fifth amendment has been asserted, the interrogator must not disregard it by seeking to unreasonably narrow its scope or have the suspect retract the invocation. 435 F.2d at 357.

An important distinction exists, however, between the instant case and *Crisp.* The petitioner in *Crisp,* rather than answering with a single word, replied to the invitation to make a statement in narrative form, saying that "he was not willing to discuss any activities on his part concerning the [Grunfield] bank robbery or any bank robbery in which he might have been involved." *Id.* The *Crisp* court found that this answer was not "in any manner ambiguous." *Id.* In contrast, while the word Feliciano uttered was not ambiguous, the manner and context of his testimony created some ambiguity. Feliciano was a cooperative subject who had made numerous affirmances of his willingness to answer questions. It was reasonable for Singer to wonder whether the "No" meant Feliciano had changed his mind or whether it meant he misunderstood the question, particularly in view of the fact that he had repeatedly stated immediately prior to the exchange in question that he was willing to answer Singer's questions on the record.

The Second Circuit was presented with a somewhat similar situation in the case of *Wilson v. Henderson,* 584 F.2d 1185 (2d Cir. 1978), *cert. denied,* 442 U.S. 945, 99 S.Ct.

---

stated he uses English in everyday conversation, the Court observed Feliciano on the witness stand during his testimony and notes that on occasion he apparently had difficulty understanding certain words in the questions posed to him by his own attorney as well as those formulated by the attorney general. *But see* note 8, *infra.*

7. Transcript of the Evidentiary Hearing, May 27, 1982, at p. 16.

8. It must be noted, however, that Feliciano has never alleged that he didn't understand the meaning of the *Miranda* warnings. Petitioner does not, therefore, base his claim of failure to waive his rights on a lack of understanding of his rights. A finding that Feliciano did not understand the word "inquiries" is thus not inconsistent with a finding that he was effectively informed of his rights.

2892, 61 L.Ed.2d 316 (1979). Wilson was arrested for a murder and robbery occurring on July 4th. After being given the standard *Miranda* warnings, Wilson was asked if he wished to make a statement. He replied, "No." He was immediately asked, "Well, would you care to tell me what you did on July 4th?" Wilson replied, "Yes," and gave a statement that placed him at the scene of the murder and robbery. He stated he had witnessed the crime, but insisted that he fled the premises because he was not personally involved and feared being blamed. 584 F.2d at 1186–87. The statement was introduced at trial, along with other evidence, and Wilson was subsequently convicted of murder and the unlawful possession of a weapon. *Id.* at 1187. On review, the Second Circuit concluded that Wilson's statement was not coerced.

The *Wilson* court stated that *Miranda* "did not create a *per se* proscription of indefinite duration upon any further questioning" once a subject invoked his right to remain silent. *Id.* The length of time between questioning although of significance is not the controlling factor in determining a fifth amendment violation. The pivotal question, rather, is whether the individual's "will to resist was overborne by persistent or coercive questions." *Id.* at 1189. Accordingly, the Second Circuit decided that *Crisp* does not mandate that the incriminating statements in the *Wilson* case be suppressed.

 In the case before us, there is no evidence of persistent or coercive questioning by either Assistant State's Attorney Singer or the police officers in the face of statements by Feliciano that he wished to remain silent. Indeed, there was no need for such alleged persistence. Feliciano had answered all previous questions and both Singer and the officers found Feliciano to be totally cooperative. He had even assisted in locating an additional suspect. Although *Crisp* requires that an interrogator refrain from seeking the retraction of a

subject's apparent invocation of his fifth amendment rights, it is clear that Singer's second question was not a request that Feliciano *retract* his first answer. Rather, it was a request that he *clarify* that answer. Thus, in light of all the circumstances herein, Singer was not required, as a matter of law, to refrain from asking Feliciano to clarify his earlier response.[9]

For the reasons stated, respondent's motion for summary judgment is granted and Feliciano's petition for a writ of habeas corpus is denied. It is so ordered.

9. Since petitioner's confession was not the result of coercion, he was not denied effective counsel when his attorney failed to argue for suppression of the confession on the ground that it was coerced. *See supra* note 4.