STATE of Wisconsin, Plaintiff-Respondent,

v.

John P. MITCHELL, Defendant-Appellant.

Supreme Court

*No. 90-2267-CR. Oral argument November 26, 1991.—Decided April 20, 1992.*

(Also reported in 482 N.W.2d 364.)

673

675

676

For the defendant-appellant there was a brief by *Thomas E. Brown, Marna M. Tess-Mattner, Kathryn A. Keppel* and *Gimbel, Reilly, Guerin & Brown,* Milwaukee and oral argument by *Thomas E. Brown.*

For the plaintiff-respondent the cause was argued by *Paul Lundsten,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

DAY, J. This is an appeal, by John P. Mitchell (defendant), certified by the Court of Appeals from a judgment of conviction by the Circuit Court for Waukesha County, Roger P. Murphy, Judge, for possession of a controlled substance, cocaine, with intent to deliver contrary to sec. 161.41(1m)(c)2, Stats., 1987–88 (Controlled Substances Act).

There are three issues in this case. First, whether the defendant was legally arrested. We hold that he was. Second, whether certain physical evidence and evidence of defendant's nonverbal conduct was admissible. We hold that both types of evidence were admissible. Third, whether *Miranda v. Arizona,* 384 U.S. 436 (1966), requires that prior to interrogation a defendant be advised that he or she has the right to stop answering questions at any time. We hold that it does not. We therefore affirm the circuit court's judgment of conviction.

The court of appeals certified only the third issue to this court. This court may and will decide all three issues:

> When this court grants direct review upon certification, it acquires jurisdiction of the appeal, which includes all issues, not merely the issues certified or

the issue for which the court accepts certification. Section 808.05(2), Stats. 1983–84. Further, the court has jurisdiction over issues not certified because the court may review an issue directly on its own motion. Section 808.05(3), 1983–84.

*State v. Stoehr,* 134 Wis. 2d 66, 70, 396 N.W.2d 177 (1986).

On June 27, 1988 at approximately 9:00 p.m., while on routine patrol near a commercial park in Brookfield, Wisconsin, Officer Scott Smith noticed two men seated in a parked car and decided to investigate. He parked behind the car and approached the driver's side on foot where, at the driver's window, he asked the occupants to identify themselves and asked if "there was any problem." Defendant, John P. Mitchell, seated in the driver's seat, and the passenger identified themselves and stated they had parked to eat some chicken.

Through the open window, Officer Smith smelled burned or burning marijuana and saw smoke inside the vehicle. He was able to identify the odor due to his training and experience. He asked both men to get out of the vehicle, and, at the rear of the vehicle advised both men that they were under arrest for possession of a controlled substance, marijuana.

After the arrests, Officer Smith informed defendant that he was going to search the vehicle and asked defendant if he would like to retrieve the marijuana himself prior to the search. It is unclear whether defendant responded verbally. Defendant walked to the driver's side of the vehicle where, through the open door, Officer Smith observed a plastic bag on the floor of the vehicle containing a scale and a white powdery substance which later proved to be cocaine and also observed defendant attempting to conceal the bag by pushing it under the seat.

When he saw defendant's actions, Officer Smith took possession of the bag. By that time a back-up officer arrived and defendant was placed in the back-up officer's squad car. Officer Smith then searched defendant's car and discovered two bags of marijuana, two marijuana pipes, and $230 in cash. At some point he acquired defendant's wallet—either from defendant or from the vehicle—in which he found a list of names and numbers.

Officer Smith approached defendant and, without consulting a written *Miranda* warning form, advised him that he had the right to remain silent; that anything he said could be used against him in court; that he had the right to an attorney and to have him present during any questioning; and that if he couldn't afford an attorney, the court would decide if he was entitled to one and appoint one without charge. He did not advise defendant that he could stop answering questions at any time.

After Officer Smith advised defendant of his *Miranda* rights, he asked defendant if he understood them and if he "wanted to speak to me now," to which defendant replied, "yes." Defendant then stated he and his friend bought some chicken and stopped and smoked some marijuana. Defendant admitted both bags of marijuana were his. Defendant also admitted that the cocaine was his, that he purchased it about a week before, that he believed it to be about an ounce, and that he planned to sell it to whomever wanted to buy it.

Defendant was then taken to the Brookfield Police Department where at approximately 9:40 p.m. he was again advised of his *Miranda* rights in the same fashion as before. Defendant was asked if he "wanted to talk about what happened," and defendant replied, "yes." Defendant then repeated his initial statements adding that he purchased the cocaine for either $1,100 or

$1,200, that the list in his wallet related, in part, to people who owed him money in drug transactions, and the scale found with the cocaine was his and used for drug transactions.

Defendant was then formally booked. At approximately 10:20 p.m., as a part of that procedure, defendant was given an "Interrogation—Advice of Rights" form to read and sign advising defendant of his *Miranda* rights. Under the "Your Rights" section, the form included the statement: "If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer." Under the "Waiver of Rights" section, defendant crossed out the sentence, "I do not want a lawyer present at this time." Defendant signed the form, made no further statements, and called his lawyer.

On August 16, 1988 a criminal complaint was filed charging defendant with possession of a controlled substance, marijuana, contrary to sec. 161.41(3r), Stats. 1987–88, and possession with intent to deliver a controlled substance, cocaine, contrary to sec. 161.41(1m)(c)2, 1987–88 (Controlled Substances Act).

Defendant filed a motion to dismiss for unlawful arrest, a motion to suppress physical evidence, and a motion to suppress statements made by defendant. On February 22, 1989, at the motion hearing, the circuit court denied defendant's motion to dismiss for unlawful arrest and his motion to suppress physical evidence and ordered briefs on the motion to suppress statements. On May 9, 1989 the circuit court filed a decision affirming its denial of the motion to dismiss for unlawful arrest and the motion to suppress physical evidence. The circuit court also denied defendant's motion to suppress statements. Defendant moved for reconsideration of the

680

denial of the motion to suppress statements. On February 14, 1990, after briefs were filed and a hearing held, the circuit court filed its decision again denying defendant's motion to suppress statements.

On March 30, 1990 defendant entered a guilty plea to count two, possession with intent to deliver cocaine. Count one, possession of marijuana, was dismissed and read in for purposes of sentencing. Defendant was sentenced to four years probation, fines totaling $1,167 and six months in the county jail with good time. Defendant appealed his conviction. The sentence was stayed pending appeal and defendant is presently out on bail.

Defendant essentially makes three arguments. First, that Officer Smith lacked probable cause to arrest defendant and therefore the arrest was illegal. Second, that defendant's non-verbal conduct of attempting to hide the cocaine was testimonial in nature and inadmissible because it was obtained before defendant was advised of his *Miranda* rights. Further, defendant argues that the physical evidence, the cocaine, was inadmissible because it was obtained as the result of defendant's inadmissible non-verbal conduct. Third, that defendant's post-*Miranda* statements admitting possession with intent to sell the cocaine were inadmissible because *Miranda* requires a defendant to be warned that he or she may stop answering questions at any time and because defendant was not so warned. We consider these issues in turn.

The first issue is whether defendant was legally arrested. Probable cause is the *sine qua non* of a lawful arrest. Probable cause refers to the quantum of evidence which would lead a reasonable police officer to believe that defendant committed a crime. There must be more than a possibility or suspicion that defendant committed

an offense, but the evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not. The information which constitutes probable cause is measured by the facts of the particular case. *See State v. Richardson,* 156 Wis. 2d 128, 148, 456 N.W.2d 830 (1990); *State v. Paszek,* 50 Wis. 2d 619, 624-25, 184 N.W.2d 836 (1971).

Defendant argues that Officer Smith arrested defendant solely because of the odor of marijuana. Citing *People v. Harshbarger,* 24 Ill. App. 3d 335, 321 N.E.2d 138 (1974), *People v. Hilber,* 403 Mich. 312, 269 N.W.2d 159 (1978), and *Kansas City v. Butters,* 507 S.W.2d 49 (Mo. App. 1974), defendant argues that Officer Smith lacked probable cause to arrest because, defendant argues, these cases stand for the proposition that marijuana odor alone is insufficient to establish probable cause.

Defendant also argues that Officer Smith testified that he smelled "burned" marijuana. Citing *Hilber,* defendant argues that the distinction between "burned," "burning," and "unburned" marijuana is important for probable cause analysis because a "burned" marijuana odor merely indicates that marijuana had been present while an unburned marijuana odor indicates that marijuana is present.

The circuit court found that Officer Smith "observed the smell of marijuana; he observed smoke in the vehicle." Whether Officer Smith both smelled and saw the marijuana smoke, or only smelled the odor of marijuana is a question of historical or evidentiary fact. This court will not disturb the circuit court's finding of historical or evidentiary fact unless it is against the great weight and clear preponderance of the evidence. *State v. Clappes,* 136 Wis. 2d 222, 235, 401 N.W.2d 759 (1987).[1]

---

[1]The "great weight and clear preponderance of the evidence"

At the preliminary hearing on October 5, 1988, the following colloquy took place between District Attorney Paul Bucher and Officer Smith on redirect examination:

Q. Did you see smoke at any time during your contact with the defendant?

A. Yes, there was some.

Q. Where?

A. In the compartment area.

Q. What compartment area?

A. The vehicle of Mr. Mitchell's [defendant's]

Q. The inside of the car?

A. Yes.

Q. When did you see this smoke?

A. It was during the time that I had approached the vehicle and had noticed the odor as well.

At the motion hearing on February 22, 1989, Officer Smith testified on direct and cross-examination that he both smelled the odor of marijuana and saw smoke inside the vehicle.

Given Officer Smith's testimony at both the preliminary hearing and the motion hearing, we hold that the circuit court's findings that Officer Smith both smelled marijuana and saw smoke are not against the great weight and clear preponderance of the evidence. Therefore, we need not address whether burned, burnt, or burning marijuana odor alone is sufficient for a finding of probable cause.

---

standard is basically a "clearly erroneous" standard. *State v. Turner,* 136 Wis. 2d 333, 343–44, 401 N.W.2d 827 (1985).

■Whether the smell of marijuana and the contemporaneous sight of smoke inside a vehicle constitutes probable cause is a question of constitutional fact involving the application of federal constitutional principles which this court reviews independently of the conclusions of the circuit court. *See Clappes,* 136 Wis. 2d at 235.

■Based on the presence of both the odor of marijuana and the smoke, Officer Smith had reason to believe that defendant, his passenger, or both had been smoking marijuana, and thus possessing, marijuana. The fact that there were two occupants in the vehicle is not fatal to a finding of probable cause to arrest defendant because probable cause does not mandate that it is more likely than not that the defendant committed the offense. *See Richardson,* 156 Wis. 2d at 148. We hold that, based on the marijuana odor and smoke inside the vehicle, Officer Smith had probable cause to arrest defendant and therefore the arrest was lawful.

The second issue is whether evidence of defendant's non-verbal conduct of attempting to conceal the cocaine and the cocaine should have been suppressed. We do not review the admissability of the marijuana because the marijuana possession charge was dismissed. The circuit court held that the physical evidence was admissible but did not rule on the admissability of defendant's non-verbal conduct. Both parties presented arguments in their briefs and at oral argument as to the admissability of both types of evidence.

We first consider whether evidence of defendant's non-verbal conduct should have been admitted into evidence. Defendant argues that his non-verbal conduct was a responsive attempt to retrieve the marijuana. Further, defendant argues that his non-verbal conduct was

testimonial or incriminating and was thus protected by *Miranda* and the Fifth Amendment.

Defendant attempts to raise a factual question: whether defendant, upon being asked by Officer Smith whether he would like to retrieve the marijuana, attempted to retrieve the marijuana or attempted to conceal the cocaine bag under the seat. Defendant relies upon his cross-examination testimony at the November 3, 1989 motion hearing:

Q. He—you went back at his [Officer Smith's] request to get the marijuana from the car, didn't you?

A. Yes, I did.

Q. And then you attempted to secrete the cocaine under the seat of the car or hide it, didn't you, when you reached underneath the seat?

A. I realized I grabbed the wrong thing. I didn't really try to hide it.

Q. Well, you realized that you were in trouble and cocaine was more serious than marijuana and you wanted to hide the cocaine. Isn't that what happened?

A. Yes.

Q. So then after—you weren't successful in hiding the cocaine, though, were you?

A. No.

Citing the above testimony, defendant argues in his brief that "[defendant's] unrefuted testimony was that he went to the car to get the marijuana but accidently grabbed the cocaine. Only when he saw he had the wrong bag did [defendant] attempt to hide the cocaine."

The circuit court did not directly address whether evidence of defendant's conduct should be suppressed. In

its May 5, 1989 decision, the circuit court stated, "Obviously the defendant was anxious to 'cooperate' hoping to hide the cocaine from the arresting officer." We infer from this statement that the circuit court found that defendant attempted to conceal the cocaine, not retrieve the marijuana.

■

It is clear by defendant's testimony and his brief that, regardless of his alleged intent, he did indeed attempt to conceal the cocaine. Based on his testimony at the motion hearing, his assertions in his brief, as well as Officer Smith's repeated testimony that he observed defendant attempting to conceal the bag under the seat, we conclude the circuit court's finding that defendant attempted to hide the cocaine was not against the great weight and clear preponderance of the evidence. *See Clappes,* 136 Wis. 2d at 235.

The next question is, whether Officer Smith's testimony that defendant attempted to conceal the cocaine was admissible under *Miranda.* In *Miranda,* the United States Supreme Court held that, in the context of a "custodial interrogation," certain procedural safeguards are necessary to protect a defendant's Fifth and Fourteenth Amendment privilege against compulsory self-incrimination. *Miranda,* 384 U.S. at 477; *Rhode Island v. Innis,* 446 U.S. 291, 297 (1980). Thus, before the warnings need be given, it must be established that the defendant was both "in custody," and under "interrogation" by police.

It is clear that defendant was in custody at the time he was interrogated by Officer Smith as he had been formally placed under arrest. We disagree with the circuit court and conclude that Officer Smith's inquiry as to whether defendant wished to retrieve the marijuana was an interrogation.

In *State v. Cunningham,* 144 Wis. 2d 272, 278, 423 N.W.2d 862 (1988), this court adopted the language of *Innis,* 446 U.S. at 301, which stated that the test of whether the words or actions of a police officer constitute an interrogation for *Miranda* purposes is "whether an objective observer could foresee that the officer's conduct or words would elicit an incriminating response." In the present case, Officer Smith stated that he was going to search the vehicle and asked defendant if he would like to retrieve the marijuana. Applying the *Cunningham-Innis* test, we conclude that an objective observer would foresee that such a question would elicit an incriminating response.

Even though defendant was the subject of a custodial interrogation, we conclude that defendant's conduct of walking to his vehicle and attempting to conceal a bag of cocaine, while testimonial in nature, was non-responsive to Officer Smith's question and therefore admissible.

The admission of non-responsive testimonial evidence is not novel. In *United States v. Castro,* 723 F.2d 1527 (11th Cir. 1984), a police officer observed the odor of marijuana outside an apartment house. When defendant descended from the second story stairs, the officer asked, "What in the world is going on here?" Defendant replied, "You want money? We got money." The federal district court suppressed defendant's apparent bribery attempt because it was a statement made during a custodial interrogation. The federal court of appeals specifically held that the defendant was the subject of a custodial interrogation but, nevertheless, reversed the federal district court stating:

> This [defendant's] statement was totally unresponsive to [the officer's] question. It was not improperly

> compelled by the officer's question in a custodial set-
> ting but, on the contrary, was spontaneously volun-
> teered by [defendant] in a deliberate attempt to com-
> mit a totally separate crime—bribery of a law
> enforcement official. The safeguards of *Miranda* can
> not be extended that far. An attempt to commit
> another crime designed to interfere with a police
> officer's carrying out of his duties simply must be
> beyond the intent of *Miranda.* This spontaneously
> volunteered bribery attempt is admissible since it is
> exactly the type of statement which the Supreme
> Court excluded from the *Miranda* rule.

*Castro,* 723 F.2d at 1530-31 (footnote omitted) (cita-
tions omitted).

We find the federal appeals court reasoning compel-
ling. In the present case Officer Smith asked defendant
whether he would like to retrieve the marijuana from his
vehicle before the officer searched the vehicle. Thereaf-
ter, defendant walked to the driver side of the vehicle
where he spontaneously attempted to conceal a bag of
cocaine by pushing it under the seat. Defendant's act of
concealing the cocaine simply had nothing to do with
retrieving marijuana. His reaction to the question was an
attempt to conceal evidence of a separate crime, the
possession of cocaine.

Though possession of cocaine and possession of
marijuana are conceptually similar because they are both
controlled substances, this facial similarity should not
obfuscate the non-responsive nature of defendant's con-
duct. Instead of retrieving marijuana, defendant
attempted to conceal evidence of another crime. Defen-
dant's attempt at concealing this other crime would be
no different than had defendant attempted to conceal a
gun used in a murder. It would defy common-sense to

suggest that a defendant's attempt to conceal a gun is responsive to the question of whether the defendant wished to retrieve some marijuana. Similarly, it would defy common-sense in this case to hold that attempting to conceal the cocaine was "responsive" to Officer Smith's question. Therefore, we conclude the conduct evidence was properly admissible.

We next consider whether the physical evidence, the cocaine, should have been admitted into evidence. Whether a search of an automobile incident to arrest violated the Fourth Amendment of the United States Constitution or Article I, sec. 11 of the Wisconsin Constitution, has been previously considered. In *State v. Fry,* 131 Wis. 2d 153, 175, 388 N.W.2d 565 (1986), *cert. denied,* 479 U.S. 989 (1986), this court adopted the bright line rule of *New York v. Belton,* 453 U.S. 454, 460 (1981), which held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."

In the present case, the defendant was at the open door of his vehicle attempting to conceal a bag of cocaine when Officer Smith observed the bag on the floor of the car. Officer Smith seized the bag as defendant attempted to push it under the seat. The defendant was already lawfully arrested and in custody. Because this search and seizure commenced immediately after defendant's arrest, there is no question about the contemporaneity of the arrest with the search and seizure. We conclude that Officer Smith's seizure of the bag of cocaine was justified as incident to the arrest of defendant.

The third issue is whether the *Miranda* warning requires a defendant to be advised that he or she may stop answering questions at any time, the so-called "fifth

right." The issue is not whether a defendant has the right to stop answering questions at any time. Clearly, he or she does. Rather, the issue is whether *Miranda* mandates that the defendant be advised of this right. In the present case, this issue controls whether defendant's post-*Miranda* verbal statements to Officer Smith at the scene of the arrest and at the police department were admissible.

We conclude that, while *Miranda* recognizes one has the right to stop answering questions at any time, *Miranda* does not mandate that a defendant be warned of this right. Therefore, we hold that the post-*Miranda* statements made by defendant in the present case were properly admitted into evidence by the circuit court.

*Miranda* established certain "procedural safeguards" to protect a defendant's Fifth and Fourteenth Amendment privilege against compulsory self-incrimination. *Innis,* 446 U.S. at 297. *Miranda* specified the warnings to be given and the procedure to effectuate and ensure the integrity of those warnings.

We first consider the warnings required by *Miranda. Miranda* begins by previewing its holding:

> Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other

fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. *Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.* The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

*Miranda,* 384 U.S. at 444–45 (emphasis added) (footnote omitted).

The holding is again summarized near the end of the opinion:

To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored the following measures are required. *He must be warned*

*prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation.* After such warnings have been given and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

*Miranda,* 384 U.S. 478–79 (emphasis added) (footnote omitted).

The warnings required by *Miranda* are specific: an in-custody defendant must be warned that he or she has the right to remain silent, that anything he or she says may be used against him or her in court, that he or she has the right to an attorney, and that an attorney will be appointed if he or she cannot afford one.

An in-custody defendant has the right to stop answering questions.[2] However, such right is not identified as one about which defendant must be "warned." We conclude the Supreme Court did not simply neglect to specify that the warnings include the right to terminate questioning because that right was identified in the

---

[2]*Miranda* twice identifies defendant's choice to "refrain from answering any further inquiries" as a "right." *Miranda,* 384 U.S. at 445, 474.

692

same paragraph that specified the requisite warnings. *Id.* at 444.

The right to stop answering questions surfaces, not at the warnings stage of the *Miranda* safeguards, but rather subsequent thereto:

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

*Miranda,* 384 U.S. at 473–74.

By employing the right to stop answering questions at the post-warning stage, *Miranda* protects a defendant's rights by placing a continuous burden on the police. The police are not absolved of responsibility by merely reading a defendant his or her *Miranda* rights. *Miranda* requires the police to maintain vigilance throughout the in-custody questioning. The burden is on the police to stop questioning if the defendant "indicates

693

in any manner and at any stage of the process" that he wishes to consult an attorney or stop the interrogation.

Several Wisconsin cases have indirectly addressed the issue of whether *Miranda* requires a defendant to be warned of this "fifth right" and have implied or stated that *Miranda* requires a defendant to be so warned. *See State v. Hernandez,* 61 Wis. 2d 253, 257, 212 N.W.2d 118 (1973) (whether there was a sufficient foundation to admit into evidence defendant's oral and written statements); *Jones v. State,* 69 Wis. 2d 337, 343, 230 N.W.2d 677 (1975) (whether defendant was properly informed of his right to counsel); *Grennier v. State,* 70 Wis. 2d 204, 213, 234 N.W.2d 316 (1975) (whether defendant was properly informed of his right to counsel); *Micale v. State,* 76 Wis. 2d 370, 374, 251 N.W.2d 458 (1977) (whether officer should have stopped post-*Miranda* questioning when defendant stated that he could not afford an attorney); *Shilling v. State,* 86 Wis. 2d 69, 78, 271 N.W.2d 631 (1978) (where even though defendant's initial *Miranda* warning "was defective in that it did not advise [defendant] of the right to stop the questioning," the defendant's statements were admissible because defendant was given five subsequent warnings and was sufficiently warned at every crucial stage of the interrogation).

Because these prior cases did not turn on whether the defendant was warned of his or her "fifth right," that issue was not dispositive. Therefore, prior statements by this court that *Miranda* requires a defendant to be advised of this "fifth right" must be viewed as mere dicta and are withdrawn.

Other jurisdictions agree with our conclusion. *See United States v. DiGiacoma,* 579 F.2d 1211, 1214 (10th Cir. 1978); *United States v. Davis,* 459 F.2d 167 (6th Cir.

1972); *United States v. Alba,* 732 F. Supp. 306, 309 (D. Conn. 1990); *Gandia v. Hokel,* 648 F. Supp. 1425, 1432 (E.D. N.Y. 1986), *aff'd,* 819 F.2d 1129 (2d Cir. 1987), *cert. denied,* 108 S. Ct. 135 (1987); *United States ex rel. Feliciano v. Lane,* 548 F. Supp. 79, 81 (N.D. Ill. 1982), *aff'd,* 714 F.2d 148 (7th Cir. 1983), *cert. denied,* 464 U.S. 1010 (1983); *Mock v. Rose,* 472 F.2d 619, 622 (6th Cir. 1972), *cert. denied,* 411 U.S. 971 (1973); *Brown v. State,* 565 So. 2d 304, 306 (Fla. 1990), *cert. denied,* 111 S. Ct. 537 (1990); *State v. Fecteau,* 568 A.2d 1187, 1188 (N.H. 1990); *Tiller v. State,* 541 N.E.2d 885, 893 (Ind. 1989); *State v. Olson,* 83 Or. App. 516, 731 P.2d 1072, 1073 (1987); *State v. Chevalier,* 458 So. 2d 507, 514 (La. App. 4 Cir. 1984); *People v. Merrero,* 121 Ill. App. 3d 716, 459 N.E.2d 1158, 1163 (1984); *Bell v. State,* 443 So. 2d 16, 21 (Miss. 1983); *Gray v. State,* 441 A.2d 209, 217 (Del. Supr. 1982); *People in Interest of M.R.J.,* 633 P.2d 474, 476 (Colo. 1981); *State v. McGhee,* 280 N.W.2d 436, 441–42 (Iowa 1979), *cert. denied,* 444 U.S. 1039 (1980); *State v. Sherwood,* 139 N.J. Super. 201, 203–05, 353 A.2d 137, 139–40 (1976); *Crafton v. State,* 545 S.W.2d 437, 439 (Tenn. App. 1976); *State v. Harbaugh,* 132 Vt. 569, 577–78, 326 A.2d 821, 826 (1974); *State v. Cobbs,* 164 Conn. 402, 416–19, 324, 244, *cert. denied,* 414 U.S. 861 (1973); *Commonwealth v. Lewis,* 374 Mass. 203, 371 N.E.2d 755, 777 (1978); *People v. Hooper,* 50 Mich. App. 186. 195–96, 212 N.W.2d 786, 790 (1973); *State v. Carlton,* 83 N.M. 644, 654, 495 P.2d 1091, 1101 (1972); *Katzensky v. State,* 228 Ga. 6, 8, 183 S.E.2d 749, 751 (1971); *State v. Harper,* 465 S.W.2d 547, 548–49 (Mo. 1971); *Green v. State,* 45 Ala. App. 549, 551–52, 233 So. 2d 243, 246 (1970). *See also,* 1 Wayne R. LaFave and Jerold H. Israel, Criminal Procedure § 6.8(d) (1984), which states, "Similarly, while the *Miranda* Court recognized that a defendant has a right to stop answering

695

questions at any time, this right was not included within the mandated warnings and thus lower courts have concluded that such a warning is not necessary." We find only one jurisdiction that has reached a contrary conclusion. *See State v. Brings Plenty,* 459 N.W.2d 390, 395-96 (S.D. 1990).

Finally, we address whether the defendant in this case waived his rights against self-incrimination. In *State v. Hernandez,* 61 Wis. 2d at 258-59, this court outlined a two step approach for resolving this issue involving analysis of waiver under both *Miranda* and the Fifth Amendment.

First, a court must determine whether the state has met its burden under *Miranda* and shown that defendant was warned of his or her constitutional rights, that he or she understood them, and that he or she intelligently waived them. *Hernandez,* 61 Wis. 2d at 258. Second, a court must determine whether the state has met its Fifth Amendment burden and shown, under *State ex rel. Goodchild v. Burke,* 27 Wis. 2d 244, 264, 133 N.W.2d 753 (1965), *cert. denied,* 384 U.S. 1017 (1966), which adopted the rule of *Jackson v. Denno,* 378 U.S. 368, 378 (1964), that defendant's statements were voluntary. *Hernandez,* 61 Wis. 2d at 258.

The state has the burden to establish these facts beyond a reasonable doubt. *Hernandez,* 61 Wis. 2d at 258. Once the state has established a prima facie case of waiver of *Miranda* rights and voluntariness of a statement of an in-custody police interrogation in the absence of countervailing evidence, the statement should be admitted into evidence. *Hernandez,* 61 Wis. 2d at 259.

This court has declined to precisely enumerate all of the facts necessary for the state to establish its prima facie case. *Hernandez,* 61 Wis. 2d at 259. However, as to *Miranda,* the general rule is that a prima facie case will be established "when the state has established that defendant has been told or has read all the rights and admonitions required in *Miranda,* and the defendant indicates he understands them and is willing to make a statement." *Hernandez,* 61 Wis. 2d at 259. This conforms with *Miranda's* language that "[t]he defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Miranda,* 384 U.S. at 444.

In the present case the circuit court found that Officer Smith twice warned defendant of his *Miranda* rights. The circuit court also found that Officer Smith twice asked defendant if he understood these rights and if defendant cared to talk about the incident, and on both occasions the defendant replied affirmatively and admitted to possessing the marijuana and cocaine. At the preliminary hearing, upon being asked by the District Attorney, "What, if anything, did the defendant say about where he obtained that white powdery substance from," Officer Smith responded, "He didn't want to tell me."

The fact that defendant was twice given the *Miranda* warnings, that defendant twice admitted to possessing the cocaine and marijuana, and his apparent refusal to indicate where he obtained the cocaine, demonstrates that defendant understood his *Miranda* rights, that he willingly waived them, and that his waiver was made intelligently and knowingly.

The Fifth Amendment issue of voluntariness overlaps the *Miranda* issue. Under the *Denno-Goodchild*

standard, a prima facie case will be established "when the state has established that the statement to be offered is, in fact, the statement of the defendant, that he was willing to give it, and that it was not the result of duress, threats, coercion or promises." *Hernandez,* 61 Wis. 2d at 259.

Defendant twice admitted to possessing the contraband. There is no issue as to whether the statements were made by defendant. Further, defendant's statements were made willingly. Lastly, there is no evidence that the defendant's statements were the result of duress, threats, coercion, or promises. Officer Smith specifically testified that he did not promise the defendant anything or threaten him, nor did anyone strike him. Defendant made no claim to the contrary. Therefore, we hold that defendant's statements were made voluntarily and there was no violation of the Fifth Amendment.

Defendant argues that he was "intoxicated" from the marijuana at the time of interrogation and this precluded him from making a knowing and voluntary waiver. Proof of intoxication "should not affect the admissibility of the evidence where there is no proof that the confessor was irrational, unable to understand the questions or his responses, otherwise incapable of giving a voluntary response, or reluctant to answer the questions posed by the authorities." *Clappes,* 136 Wis. 2d at 241–42.

The circuit court found that "[defendant's] actions indicate little, if any, affect from his use of marijuana, that his responses, physically and verbally, were rational and responsive." In addition, as to defendant's testimony that the marijuana did impair his judgment, the circuit court found that this testimony "lacks credibil-

ity." The record does not show the circuit court's findings were against the great weight and clear preponderance of the evidence. *See Clappes,* 136 Wis. 2d at 235. We conclude that defendant's marijuana "intoxication" did not impair his ability to voluntarily waive his *Miranda* or Fifth Amendment rights.

Therefore, we hold that Officer Smith had probable cause to arrest defendant and therefore the arrest was legal; that both the physical evidence of the cocaine and the testimonial evidence of defendant's non-verbal conduct was properly admitted into evidence; that *Miranda* does not require a defendant be warned of the right to stop answering questions at any time; that the defendant in this case waived his rights against self-incrimination; and therefore that defendant's post-*Miranda* statements were properly admissible. We therefore affirm the judgment of conviction.

*By the Court.*—The judgment of conviction of the Circuit Court for Waukesha County is affirmed and the cause is remanded for further proceedings not inconsistent with this opinion.

HEFFERNAN, CHIEF JUSTICE (*concurring*). I join the opinion of the majority. I write separately only to emphasize that the majority opinion in no way prevents law enforcement officers from informing arrestees that they have the right to stop answering questions at any time. I agree with the position expressed in the concurring opinion of Justice Abrahamson that good police practice and effective law enforcement will be furthered by informing arrestees of their "fifth right."

SHIRLEY S. ABRAHAMSON, J. (*concurring*). Until this decision, our court has interpreted *Miranda v. Arizona,* 384 U.S. 436 (1966), for purposes of state law enforcement, as requiring a law enforcement

officer to warn a suspect during a custodial interrogation of the right to stop answering questions at any time.[1] I write to urge law enforcement officers to continue to read this "fifth right." Reading the "fifth right" provides suspects with a fuller and more explicit statement of their rights and reminds law enforcement officers of their responsibility to cease questioning if the suspect indicates in any manner and at any stage of the process that he or she wishes to consult an attorney or stop the interrogation.[2]

Reading the "fifth right" will not, in all likelihood, inhibit confessions[3] and can only enhance police professionalism and observance of Fifth Amendment law.[4] Furthermore, the reading of the "fifth right" may help police build a stronger case. The reading of the "fifth right" may be an important factor to a court determining whether the state proved that the suspect was advised of and understood his or her constitutional rights, that the suspect intelligently waived these rights, and that the

[1]See, *e.g.*, *Schilling v. State*, 86 Wis. 2d 69, 78, 271 N.W.2d 631 (1978); *Micale v. State*, 76 Wis. 2d 370, 374, 251 N.W.2d 458 (1977); *Grennier v. State*, 70 Wis. 2d 204, 213, 234 N.W.2d 316 (1975); *State v. Hernandez*, 61 Wis. 2d 253, 257, 212 N.W.2d 118 (1973).

[2]Law enforcement officers have a duty to "respect the constitutional rights of all men to liberty, equality and justice." Law Enforcement Code of Ethics.

[3]See, *e.g.*, Study, *Interrogations in New Haven: The Impact of Miranda*, 76 Yale L.J. 1519, 1536 (1967); R.J. Medalie, L. Zeitz, & P. Alexander, *Custodial Police Interrogation in our Nation's Capital: The Attempt to Implement Miranda*, 66 Mich. L. Rev. 1347, 1372–79 (1968); Note, *Miranda v. Arizona*, 67 Colum. L. Rev. 645, 654–657 (1967).

[4]*Cf.* M. Orfield, *Deterrence, Perjury, and the Heater Factor: An Exclusionary Rule in The Chicago Criminal Courts*, 63 U. Colo. L. Rev. 75, 80–81, 83, 124–25 (1992).

suspect made the statements voluntarily. *United States v. DiGiacomo,* 579 F.2d 1211, 1214 (10th Cir. 1978).

I write separately to urge law enforcement officers to continue giving the same *Miranda* warnings they have given in this state for at least the last twenty years.