COURT OF APPEALS
DECISION
DATED AND FILED

February 17, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2018AP2245-CR**
**2018AP2246-CR**

Cir. Ct. Nos. **2014CF74**
**2014CF24**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

 PLAINTIFF-RESPONDENT,

 V.

LEANEL A. HOLDER,

 DEFENDANT-APPELLANT.

---

 APPEALS from judgments and an order of the circuit court for Sheboygan County: L. EDWARD STENGEL, Judge. *Affirmed*.

 Before Reilly, P.J., Gundrum and Davis, JJ.

 **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

 ¶1 PER CURIAM. Leanel Holder appeals from judgments convicting him after being charged in two cases involving the distribution of heroin which

ultimately found its way, via a "middleman," Monica Sanchez, to W.W., who died after injecting it. In one case, Holder was charged with conspiracy to deliver/distribute heroin (> fifty grams) and possession with intent to deliver heroin (ten to fifty grams). In the second, the State charged Holder and Sanchez as codefendants with first-degree reckless homicide based on W.W.'s death. Holder also appeals from an order denying his postconviction motion alleging ineffective assistance of trial counsel. This court consolidated Holder's cases for briefing and disposition.

¶2      Holder raises two issues on appeal. He first claims that trial counsel was ineffective for failing to: (1) call a toxicologist to testify about W.W.'s postmortem blood test results, so as to challenge the State's showing at trial that heroin was a substantial factor in causing W.W.'s death; and (2) impeach a detective testifying that Holder's heroin had caused past overdoses. The second issue is whether the trial court erred in denying Holder's pretrial motion to suppress evidence obtained from his arrest, on the alleged grounds that police lacked probable cause to support the arrest. We conclude that trial counsel was not ineffective. We further conclude that there was probable cause to arrest Holder based on Sanchez's statements about Holder's illicit activities, which the trial court properly determined were against Sanchez's penal interest and thus reliable. Accordingly, we affirm the judgments and the order.

*Background*

¶3      The homicide case was tried to a jury. Holder argued that the State failed to prove that he supplied the heroin to Sanchez that caused W.W.'s death. Holder emphasized Sanchez's admission to buying heroin from another dealer, "Black," for some of her "drug-sick" customers as she waited for Holder to deliver

his heroin to her on December 28, 2013, the date W.W. died. Holder argued that Sanchez was lying about not having sold Black's heroin to W.W. This argument was intended to show reasonable doubt that W.W. had used only or any of Holder's heroin. Holder also contended that, even if W.W. used the heroin he sold to Sanchez, the amount was too little to be a substantial factor in his death, as he injected only half of a bindle, had a high tolerance level, and easily could have left the apartment to purchase heroin from another source.

¶4 The jury found Holder guilty after a three-day trial. He pled no contest to the two counts in the drug case.

¶5 Postconviction, Holder claimed ineffective assistance of trial counsel for failing to present a toxicologist to opine on the amount of heroin that W.W. injected before he died, based on his postmortem blood levels. Holder also claimed ineffective assistance for counsel's failure to object to a "material misstatement," allegedly intentional, during Detective Paul Olsen's testimony that Holder's heroin had caused past overdoses or deaths.

¶6 The court held two hearings on the postconviction motion. Holder's postconviction counsel called trial counsel to testify and also presented testimony from forensic toxicologist James Oehldrich, formerly with the State Crime Lab. Oehldrich opined that W.W. died as a result of poly-substance toxicity but, based on morphine levels in W.W.'s postmortem blood samples, he likely took more than a half-bindle of heroin before he died, implying that W.W. also got heroin from another source.

¶7 The State presented testimony and a letter from State Crime Lab advanced toxicologist Leah Macans. She testified that the toxicology community

3

and literature look askance at the type of analysis Oehldrich did—extrapolating pre-death drug use based on postmortem blood results—as the results are inherently unreliable.  The court denied the postconviction motion, ruling that trial counsel's performance was neither defective nor prejudicial.  Holder appeals.

*Ineffective Assistance of Counsel*

¶8      The essence of an ineffective-assistance claim is that counsel made such unprofessional errors as to upset the adversarial balance between defense and prosecution, rendering the trial unfair and the verdict suspect.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, *id.* at 688, and that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  The likelihood of a different result must be substantial, not merely conceivable.  *Id.* at 693.  Ineffective assistance claims present mixed questions of fact and law.  *State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985).  We will uphold the trial court's factual findings unless they are clearly erroneous, but review de novo whether counsel's performance was deficient and prejudicial.  *Id.*

¶9      The amount of heroin W.W. received from Sanchez on December 28 was disputed at trial.  Holder advanced the two-pronged defense that:  (1) someone other than Holder supplied the heroin that W.W. bought from Sanchez; or (2) even if Holder supplied some of the heroin, the amount of heroin W.W. bought from Sanchez was not enough to cause W.W.'s death, such that W.W. must have obtained additional heroin from another source.

4

¶10    The second argument was meant to cast reasonable doubt on whether the heroin Holder supplied was a substantial factor in W.W.'s death. To that end, W.W.'s girlfriend testified that: on December 28, W.W. went to Sanchez's place and returned shortly with a bindle of heroin; that, per usual, she and W.W. split it; that W.W. injected her first; that she immediately fell asleep and did not see if W.W. injected himself; and that when she awoke, W.W. was slumped, unresponsive, on the edge of the bed.

¶11    Other testimony established that a number of people, including W.W., were at Sanchez's residence around the time Sanchez arrived with fifteen grams of heroin, and that Sanchez broke them down into smaller bindles. Sanchez claimed she briefly left the bindles unattended and some were missing when she returned. Another woman testified that Sanchez said that W.W. may have stolen some of that heroin. Sanchez stated that she obtained this heroin from Holder.

¶12    The Wisconsin pattern jury instruction provides that the State must prove that the victim "used the substance alleged to have been delivered by the defendant and died as a result of that use. This requires that use of the controlled substance was a substantial factor in causing the death." WIS JI—Criminal 1021. "[A] 'substantial factor' need not be the sole cause of death for one to be held legally culpable." *State v. Below*, 2011 WI App 64, ¶27, 333 Wis. 2d 690, 799 N.W.2d 95 (citation omitted). Dr. Mark Witeck, a forensic pathologist, testified for the State at trial that, although W.W. died of poly-substance toxicity based on the interaction between heroin and numerous other drugs in his system, he was able to state with certainty that heroin was "a substantial factor in causing [W.W.'s] death."

¶13    Trial counsel testified postconviction that he did not retain a toxicologist because he did not believe that the State had sufficient evidence to

5

prove beyond a reasonable doubt that whatever heroin came from Holder was enough to cause W.W.'s death. And, in fact, Witeck testified that W.W.'s death was caused by a multitude of substances, only one of which was heroin; that there is no clear lethal amount of heroin; and that he did not know how much heroin W.W. had taken before he died. Counsel also testified that his advance trial preparation was such that he knew what the testimony was going to be on these points, and thought he could cast enough doubt on the relationship between the heroin and the death to obtain an acquittal. Witeck, in fact, admitted that he could not opine that the very small dose that Sanchez claimed to have supplied to W.W. (via his girlfriend—as noted, there was also testimony that W.W. may have obtained more without Sanchez's knowledge) would have significantly affected W.W.'s test results. With that admission in hand, it is hard to see what a toxicologist opinion would have added here. The more salient question for the jury was whether additional heroin came from Sanchez, or a different source, a point that had nothing to do with the toxicologist's report.

¶14    Moreover, the court concluded that even if trial counsel should have called Oehldrich, his failure or decision not to do so was not prejudicial because, given that the State said it would have made a *Daubert*[1] challenge. The court said it was "highly unlikely" it would have allowed Oehldrich to offer his opinions, based on Macan's postconviction testimony that a postmortem toxicology report opining as to the level of pre-death ingestion of heroin was not reliable under prevailing standards within the medical profession. We agree with this analysis. "[T]rial counsel [is] not ineffective for failing or refusing to pursue feckless arguments." *State v. Toliver*, 187 Wis. 2d 346, 360, 523 N.W.2d 113 (Ct. App.

---

[1]    *See **Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579 (1993).

6

1994) (citation omitted). Further, testimony countering Oehldrich's opinions would be more than sufficient to undermine any probative value, credibility, or weight that a jury may logically attach to his opinions.

¶15 As to the second ineffectiveness ground, concerning counsel's alleged failure to impeach Detective Olsen, Holder claims that Olsen's testimony that there was information that others had overdosed on Holder's heroin was contradicted by testimony from a prior hearing. Our review does not show such a contradiction. Rather, Olsen was asked at trial if Sanchez had ever told him that others had overdosed on Holder's heroin, to which he testified that while someone had told him that, he could not recall if it was Sanchez. He also testified that another party, Kandace Seyferth, had told him that Holder's heroin had caused an overdose to her fiancé. His prior testimony was simply that he was not aware of Sanchez saying that Holder's heroin had caused any deaths. There was no basis to impeach Olsen, let alone a failure that rises to the level of ineffective assistance of counsel. Whether there was some other basis on which counsel should have objected to Olsen's testimony is a point we need not consider since it has not been raised. In any event, we agree with the trial court that while trial counsel could have objected to the testimony, in light of all of the evidence presented, Olsen's statements could not be considered significant in the jurors' ultimate determination.

*Motion to Suppress*

¶16 Contending police did not have probable cause to arrest him, Holder argues that the court erroneously denied his motion to suppress the drug evidence obtained. He thus seeks plea withdrawal in his drug case and vacation of his homicide conviction.

¶17    "Probable cause is the *sine qua non* of a lawful arrest." ***State v. Mitchell***, 167 Wis. 2d 672, 681, 482 N.W.2d 364 (1992).  It "refers to the quantum of evidence which would lead a reasonable police officer to believe that [the] defendant committed a crime." ***Id.***  "There must be more than a possibility or suspicion that [the] defendant committed an offense, but the evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not." ***Id.*** at 681-82.  "The information which constitutes probable cause is measured by the facts of the particular case." ***Id.*** at 682 (citation omitted).

¶18    In reviewing the denial of a motion to suppress, we will uphold the trial court's findings of fact unless clearly erroneous but review de novo the court's "application of constitutional principles to those facts." ***State v. Vorburger***, 2002 WI 105, ¶32, 255 Wis. 2d 537, 648 N.W.2d 829 (citations omitted).

¶19    Sanchez informed police that Holder would be driving to Sheboygan from Chicago on January 2, 2014, with a supply of heroin.  Investigators put his vehicle under surveillance when it entered Sheboygan County and followed it until Holder parked outside his condominium.  Holder exited the vehicle holding a bag.  As police approached, he dropped it on the pavement.  It contained 30.5 grams of heroin.

¶20    Olsen testified at the suppression hearing that he was assigned to the case when W.W. died.  Holder tried to show on cross-examination that Sanchez's information to police was a tip from a confidential informant Olsen had not used before, making her reliability questionable.

¶21    When police have relied, at least in part, on information from an informant, we balance two factors to determine whether their reliance was

reasonable: "the quality of the information, which depends upon the reliability of the source[,]" and "the quantity or content of the information." *State v. Miller*, 2012 WI 61, ¶31, 341 Wis. 2d 307, 815 N.W.2d 349 (citation omitted). If, as Holder posits, "an informant has limited reliability … the tip must contain more significant details or future predictions along with police corroboration." *Id.*, ¶32. "The relevant question is whether the tip contained 'sufficient indicia of reliability,' along with other information known to police, to support reasonable suspicion …." *Id.* (citation omitted)

¶22 The Sheboygan Metropolitan Enforcement Group and the State Division of Criminal Investigation had been investigating Holder since Sanchez approached them with information in November 2013. In this tip, she told them that Holder was bringing more heroin from Chicago on January 2, 2014. She also volunteered that she had been selling heroin Holder supplied, had traveled to Chicago with him in the past to secure the drug, and was providing this information because she wanted to stop selling heroin but feared retaliation from him. Olsen testified that he discussed the matter with his captains and was given the go-ahead to arrest Holder. An arresting officer need not have personal knowledge of facts supporting probable cause if "the collective knowledge of police[ ] is sufficient to constitute probable cause." *See State v. Pickens*, 2010 WI App 5, ¶12, 323 Wis. 2d 226, 779 N.W.2d 1 (citation omitted).

¶23 The court rejected Holder's suppression arguments, stating that it viewed Sanchez not as an informant but as a co-conspirator and that her statements were against her penal interest, lending them "a certain credibility." "When a declarant makes statements against his [or her] penal interest that are closely related to the criminal activity being investigated, under circumstances providing the

declarant with no apparent motive to speak dishonestly, such statements may be taken as establishing the declarant's credibility and thus his [or her] veracity." ***State v. Romero***, 2009 WI 32, ¶36, 317 Wis. 2d 12, 765 N.W.2d 756. Beyond that, police had independently investigated Sanchez's information, of which she had personal knowledge, for about six weeks. They also were able to corroborate details of Sanchez's claims, for example by tracking Holder's cell phone as he drove from Chicago to Sheboygan, and the bag he carried as he exited his car contained heroin.

¶24     The trial court's factual findings are not clearly erroneous and, under that set of facts, there was probable cause to arrest Holder. We conclude Holder has not established that he is entitled to withdraw his plea or have his conviction vacated.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.