The appellant, Cedrick Huffman, pleaded guilty to possession of a controlled substance, cocaine, in violation of §13A-12-212, Code of Alabama 1975, and possession of marijuana for personal use in violation of § 13A-12-214. He was sentenced to 18 months' imprisonment in the penitentiary in both cases, the sentences to be served concurrently. The sentences were suspended and he was placed on supervised probation for 18 months. Before pleading guilty, the appellant had moved to suppress certain evidence. The trial court denied his motion and he reserved the right to appeal as to that issue.
The state's evidence tended to show that at 1:30 a.m. on December 11, 1993, Corporal Huey D. Thornton and Officer Dale W. O'Banion of the Montgomery Police Department were on routine patrol on Edgemont Avenue in Montgomery, Alabama. As they passed an Amoco gasoline station and food shop, the officers noticed an automobile, in which the appellant and another occupant were sitting, parked in the last stall of the *Page 79 
car wash adjacent to the Amoco station. Although the car wash was available for use 24 hours a day, the Amoco station was closed. Both officers testified that there was no water on the ground and that no one was attempting to wash the car parked in the stall. The officers became suspicious because there had been several burglaries at this Amoco station recently. Also, both officers testified that this area was known for drug activity. In fact, Corporal Thornton had made a drug arrest in that same car wash. The officers decided to investigate. They drove toward the car wash and parked behind the car. The appellant got out of the passenger's side of the car and began walking toward the officer's car in what Corporal Thornton described as an "aggressive manner." Thornton told the appellant to step back towards his vehicle. Based on the appellant's behavior and the circumstances surrounding the incident, Thornton decided to search the appellant for weapons. Thornton testified that as he was patting down the appellant, he felt a hard lump, which he recognized as a rock of crack cocaine. He seized the rock, along with some cocaine in powder form and some marijuana, and placed the appellant under arrest. A subsequent search of the car revealed a .38 caliber revolver.
The appellant contends that the trial court erred in denying his motion to suppress evidence of the drugs seized as a result of the stop. More specifically, he contends that the initial stop and pat down by police and the resulting seizure of drugs violated his Fourth Amendment rights under Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The appellant preserved this issue by reserving the right to appeal his adverse ruling at the time of entering his plea. Prim v. State,616 So.2d 381, 382 (Ala.Cr.App. 1993).
The appellant first contends that the stop and pat down by the police was illegal because, he says, they did not have a reasonable suspicion to believe the appellant had been involved in criminal activity, as required by Terry. In Worthy v. State,473 So.2d 634, 636 (Ala.Cr.App. 1985), this court summarized the standards required by Terry and the cases following Terry.
"In Terry, it was held that
 " 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or other's safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.' 392 U.S. at 30, 88 S.Ct. at 1884-85.
 "In order to justify the brief investigatory detention of an individual, a police officer does not have to have probable cause to arrest the person for a crime. Terry, 392 U.S. at 27, 88 S.Ct. at 1883; Spradley v. State, 414 So.2d 170, 173
(Ala.Cr.App. 1982). Although there is 'no simple shorthand verbal formula which can adequately express the grounds for a Terry stop', 3 LaFave, [Search and Seizure] at § 9.3, p. 40, 1985 Pocket Part, 'the essence of all that has been written is that the totality of the circumstances — the whole picture — must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.' United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)." 473 So.2d at 636-37.
The officers' testimony revealed that they had a reasonable suspicion that the appellant was involved in criminal activity. Corporal Thornton testified that the appellant was sitting in a car at 1:30 a.m. near an Amoco service station that Thornton knew to be closed, that had been burglarized several times recently, and that was in an area known to be an area of drug activity. Furthermore, *Page 80 
Corporal Thornton testified that the appellant walked toward the officer's car in an "aggressive manner." This court has repeatedly held that similar facts, when the court considers the totality of the circumstances, are sufficient to give police a reasonable suspicion that criminal activity is afoot.State v. Richardson, 616 So.2d 400 (Ala.Cr.App. 1993);Richardson v. City of Trussville, 492 So.2d 625 (Ala.Cr.App. 1985); Worthy, supra. Therefore, the trial court did not err in holding that the officers conducted a valid Terry stop and pat down for weapons.
The appellant further contends that the pat down exceeded the scope of Terry, and that, therefore, the drugs found during that pat down are not admissible as evidence. He argues that the pat down for weapons turned into a general exploratory search to discover evidence. Generally, a Terry pat down must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." 392 U.S. at 26, 88 S.Ct. at 1882,20 L.Ed.2d at 908. However, in Minnesota v. Dickerson, ___ U.S. ___,113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the United States Supreme Court addressed the question "whether police officers may seize nonthreatening contraband detected during a protective patdown search of the sort permitted by Terry." ___ U.S. at ___,113 S.Ct. at 2136, 124 L.Ed.2d at 344. The United States Supreme Court held that an officer may seize nonthreatening contraband, so long as the officer's search stays within the bounds marked by Terry. ___ U.S. at ___, 113 S.Ct. at 2136,124 L.Ed.2d at 344. The Court outlined the bounds of Terry by recognizing a "plain feel" exception analogous to the "plain view" exception to the Fourth Amendment's warrant requirement:
 "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context."
___ U.S. at ___, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. The Court reasoned as follows:
 "We think that this doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment — or at least no search independent of the initial intrusion that gave the officers their vantage point. See Illinois v. Andreas, 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983); Texas v. Brown, [460 U.S. 730], 740, 103 S.Ct. [1535], 1542, [75 L.Ed.2d 502 (1983)]. The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment. . ..
 ". . . First, Terry itself demonstrates that the sense of touch is capable of revealing the nature of an object with sufficient reliability to support a seizure. The very premise of Terry, after all, is that officers will be able to detect the presence of weapons through the sense of touch and Terry
upheld precisely such a seizure. Even if it were true that the sense of touch is generally less reliable than the sense of sight, that only suggests that officers will less often be able to justify seizures of unseen contraband. Regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures. The [Minnesota] court's second concern — that touch is more intrusive into privacy that is sight — is inapposite in light of the fact that the intrusion the court fears has already been authorized by the lawful *Page 81 
search for weapons. The seizure of an item whose identity is already known occasions no further invasion of privacy. . . . Accordingly, the suspect's privacy interests are not advanced by a categorical rule barring the seizure of contraband plainly detected through the sense of touch."
___ U.S. at ___, 113 S.Ct. at 2137-38, 124 L.Ed.2d at 345-46. (Some citations omitted; footnotes omitted.)
In Dickerson, as in this case, the police had made a Terry
stop and a pat down of a suspect based on his conduct in an area known for significant drug activity. During the pat down, the officer felt a lump that later proved to be a rock of crack cocaine. However, the officer did not recognize it as crack cocaine until he examined it closer and manipulated it with his fingers. Although the Court recognized the "plain feel" exception, it held that the officer's further search of the suspect's pocket exceeded the scope of Terry because the incriminating character of the crack cocaine was not "immediately apparent." ___ U.S. at ___, 113 S.Ct. at 2139,124 L.Ed.2d at 348.
In this case, Corporal Thornton testified that based on his training and experience he recognized the lump as having the configuration of a crack cocaine rock. He further testified that he did not have to wiggle the crack rock around during the pat down in order to recognize it as being what it was.
 "Q [defense counsel] — All right. When you were patting him down and you felt the rock, did you wiggle that rock around a little bit to make sure you knew before you went in his pocket what it was?
"A — No, I didn't.
 "Q — Okay. What did you do? How did you determine that?
 "A — From my pat down, I could tell the outline of the rock without wiggling it around or anything like that.
". . . .
 "Q — Is it true that after you say you located this rock — and once again tell us how you discerned that it was a rock of crack cocaine. Explain to the court how you determined it was a rock.
 "A — Basically as I stated earlier, I have made several other arrests in which crack cocaine was taken from the subject or crack cocaine was found on the subject. So I can tell the general outline of what a crack cocaine rock is.
"Q — As compared with anything else?
"A — Yes, I can.
". . . .
 "Q [prosecutor] — Okay. How many — have you made a lot of drug arrests in your career?
 "A — I have made quite a few. I wouldn't say a lot. But I would say quite a few.
 "Q — Have you made enough drug arrests to be able to feel reasonably certain what a rock of crack cocaine feels like?
"A — I have."
(R. 14-17)
Based on the United States Supreme Court's holding inDickerson, Corporal Thornton's pat down and subsequent seizure of drugs from the appellant did not exceed the scope of Terry
and the motion to suppress those drugs as evidence was correctly denied.
For the above reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.