689 So.2d 212 (1995)
Willie T. ALLEN, Jr., alias
v.
STATE.
CR-94-1724.
Court of Criminal Appeals of Alabama.
December 29, 1995.
Rehearing Denied March 8, 1996.
Certiorari Quashed February 7, 1997.
George Nassaney, Tuscaloosa, for Appellant.
Jeff Sessions, Atty. Gen., and Margaret Childers, Asst. Atty. Gen., for Appellee.
Alabama Supreme Court 1950998.
*213 COBB, Judge.
The appellant, Willie T. Allen, Jr., pleaded guilty to unlawful possession of marijuana in the first degree, a violation of § 13A-12-213, Code of Alabama 1975. He was sentenced to 15 years in the penitentiary pursuant to the Habitual Felony Offender Act. Before pleading guilty, the appellant had moved to suppress certain evidence. The trial court denied his motion, and he specifically reserved the right to appeal as to that issue.
The State's evidence at the suppression hearing tended to show the following: On January 21, 1994, officers from the Tuscaloosa Police Department and the Alcoholic Beverage Control Board executed a search warrant at the residence of Viola Mills in Tuscaloosa. Officer A.W. Clark of the Tuscaloosa Police Department testified that police suspected that the residence was a "shot house," where alcoholic beverages were sold illegally. Clark stated that when he and the other officers drove up to the front of the residence, the front door was open. The officers identified themselves as police and stated that they had a search warrant.
Officer Clark testified that when he entered the house he saw the appellant sitting on a couch. The appellant was holding his right hand under a cushion. Clark testified that he told the appellant to stand up so he could frisk him for weapons. He stated that he did so because weapons are commonly found during the execution of search warrants.
Clark stated that he started frisking the appellant around his waist and moved to his rear pants pockets. Clark demonstrated to the trial court the method he used to frisk the appellant, and the court put the following statement on the record:
"THE COURT: Let the record show that Officer Clark is showing rather than a patting movement where he would move his hands up and down making contact with his back pocket, he's showing he was more or less sliding it or moving it around maintaining contact on the pocket at all times."
Officer Clark testified that, through the appellant's clothes, he felt a package containing a leafy substance that he believed to be marijuana. He said that he asked the appellant if the substance was marijuana and that the appellant told him it was. Clark removed the package and placed the appellant under arrest.
On cross-examination Clark testified that the marijuana was in a small manila envelope about two inches by three inches in size and that the envelope was folded in half. Clark stated that he was not sure how many times he moved his hand over the envelope before he realized that it was not a weapon, but that it was probably more than once. He stated that he moved his hand over the item more than once to make sure that the envelope did not "contain a razor blade," which, he testified, drug users often carry. However, he testified that when he realized that it was not a weapon, he simultaneously realized that it was a "dime bag" of marijuana. Clark stated that he had felt marijuana packaged this way on hundreds of occasions. The envelope contained about three grams of marijuana.
The appellant contends on appeal that the frisk and the subsequent seizure of the marijuana violated his Fourth Amendment rights under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). We disagree.
Generally, a Terry patdown must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Terry, 392 U.S. at 26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908. In Minnesota v. Dickerson the United States Supreme Court recognized a "plain feel" exception to the Fourth Amendment protection analogous to the "plain view" exception. The court stated:
"If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified *214 by the same practical considerations that inhere in the plain view context."
508 U.S. at 375-76, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. (Emphasis added.)
The Supreme Court in Dickerson did not intend that the plain feel doctrine should be construed without reference to the standards for a "protective search" set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Although the Supreme Court in Dickerson recognized the plain feel doctrine, it ultimately concluded, under the facts of that case, that the evidence (a lump of crack cocaine detected in the defendant's pocket by an officer in the course of conducting a patdown) was illegally seized, because the officer's patdown of the defendant before his seizure of the cocaine exceeded the permissible scope of Terry. Under Terry, an officer may conduct a protective patdown search of a suspect "to determine whether the person is in fact carrying a weapon." Terry, 392 U.S. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908. However, because the court in Dickerson found that the officer's patdown exceeded the purposes of a protective search before he recognized the object in the defendant's pocket as contraband, the plain feel doctrine could not salvage the officer's subsequent seizure of the contraband. Although the Supreme Court, in ruling that the officer's actions were unconstitutional, emphasized the fact that the officer testified that he had manipulated the object in the defendant's pocket, by squeezing it and sliding it through his fingers, before concluding that the object was a lump of crack cocaine and then seizing it, it is clear that the factor that actually rendered the officer's actions unconstitutional was the officer's testimony that he continued to squeeze, to slide, and to manipulate the object in the defendant's pocket even though it was "a pocket which the officer already knew contained no weapon." Dickerson, 508 U.S. at 378, 113 S.Ct. at 2138, 124 L.Ed.2d at 347 (emphasis added). The court stated that "the dispositive question before this Court is whether the officer who conducted the search was acting within the lawful bounds marked by Terry at the time he gained probable cause to believe that the lump in respondent's jacket was contraband." Dickerson, 508 U.S. at 377, 113 S.Ct. at 2138, 124 L.Ed.2d at 347. In reaching its conclusion that the officer's actions exceeded the lawful bounds set by Terry, the court pointed to the evidence in the record indicating that the officer never actually believed that the object he felt in the defendant's pocket might be a weapon. Id. The officer's actions went beyond the scope of Terry because he continued his patdown beyond the point that it could be justified as a protective search.
The only occasion an Alabama state court has had to apply the "plain feel" doctrine set out in Dickerson was in Huffman v. State, 651 So.2d 78 (Ala.Cr.App.1994). In that case this court held that the police did not exceed the scope of Terry and Dickerson. The officer in Huffman testified that he recognized a lump felt during a patdown as having the configuration of a crack cocaine rock without any further examination.
In United States v. Ross, 827 F.Supp. 711 (S.D.Ala.1993), aff'd 19 F.3d 1446 (11th Cir. 1994), the district court held that the seizure of a matchbox containing cocaine during a Terry patdown exceeded the scope of Dickerson, because the incriminating character of the matchbox as a hiding place for drugs or weapons was not so "immediately apparent" as to justify the removal of the matchbox from the defendant's clothing. However, the officer in Ross testified that he only suspected that the matchbox might contain contraband, and this fact was the basis for the district court's determination that the officer's seizure of the matchbox was unconstitutional. In fact, the district court stated that its holding might have been different had the contraband been in a container through which the officer could feel its contour or mass. Ross, 827 F.Supp. at 719 n. 15.
In United States v. Ponce, 8 F.3d 989 (5th Cir.1993), the United States Court of Appeals for the Fifth Circuit briefly addressed Dickerson. In Ponce the appeals court affirmed the district court's denial of the defendant's motion to suppress but found that the defendant had consented to a search of his pockets. However, the court stated that if there had been no consent, the search would have exceeded the scope of Dickerson. The court stated:

*215 "As in Dickerson, the contraband nature of the contents of Ponce's watch pocket was not `immediately apparent' to Officer Yancy. Yancy's pat down of the watch pocket revealed only a `little bump.' At that point, Officer Yancy's search may have reached the bounds marked by Terry, which allow a protective search `limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.' Terry v. Ohio, 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968). His further fingering of the bump revealed something `squishy' that he believed might have been folded dollar bills. Even if the officer's further probing were part of a protective search, Officer Yancy's testimony belies any notion that he immediately recognized the bump as contraband. At best, based on his general experience as a policeman, Yancy believed the `little bump' might be folded dollar bills containing a razor blade. Under Dickerson, Yancy's speculation about what the bump might be is insufficient to justify his seizure of the contents of Ponce's watch pocket.
"This is not to say the government could never prove that a police officer's protective search might properly include seizure of an object that feels like a wad of folded bills concealing a weapon. The record here simply does not support such a finding. Yancy did not say he felt something that felt like a weapon wrapped in currency or some other form of paper. Rather, he testified that he was aware that razors are sometimes concealed in folded bills and that such razors have been used against police officers. And except for Yancy's testimony, the government did not offer any evidence to bolster the assertion that weapons are sometimes concealed in folded bills and used against officers."
Ponce, 8 F.3d at 999 (footnote omitted).
In the present case, Officer Clark testified that he moved his hand over the envelope more than once because he wanted to make sure that the envelope did not contain a razor blade, which, he testified, is commonly carried by drug users (and which obviously may be used as a weapon against an officer). As was not the clear case in Dickerson, however, Officer Clark's touching of the envelope and its contents through the appellant's clothing did not take place after he was convinced that what he felt was not a weapon. Rather, the record indicates that Officer Clark was convinced that what he felt was not a weapon at the same time, and only at the same time, that he gained probable cause to believe that what he felt was contraband. Even if he touched the envelope more than once, his patdown of the appellant remained within the permissible bounds of Terry, so long as he was touching the envelope to determine whether it was or was not a weapon. It was in the course of conducting a legal Terry patdown, then, that Officer Clark acquired the information, through touch and through his observation of other attendant circumstances, that gave him probable cause to believe that what he felt through the appellant's clothingthe envelope and its contentswas contraband. Dickerson makes it clear that Officer Clark's actions in feeling the envelope more than once would have exceeded the legitimate bounds of a Terry patdown only if he had continued to manipulate the envelope after he realized that it did not contain a weapon. However, Officer Clark testified that at the same time he realized that what he felt was not a weapon, he realized it was a "dime bag" of marijuana. This clearly satisfies the "immediately apparent" requirement of Dickerson and places Officer Clark's actions in seizing the contraband within the legitimate parameters of the plain feel doctrine.
The Supreme Court in Dickerson made it clear that the plain feel doctrine is a corollary of the long-recognized plain view exception that allows warrantless seizures. Under the plain view doctrine, if a police officer is lawfully in a position from which the officer views an object whose incriminating character is apparent, and the officer has a lawful right of access to the object, the officer may properly seize it without a warrant. See Horton v. California, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 2307-08, 110 L.Ed.2d 112 (1990); Texas v. Brown, 460 U.S. 730, 739, 103 S.Ct. 1535, 1541-42, 75 L.Ed.2d 502 (1983). There is no requirement under the plain view doctrine, however, that *216 the officer recognize the object as contraband upon first glance, or that any information gained from additional looking must be ignored, or that the officer cannot mull over what has been seen before concluding that it is in fact contraband. Nor is it necessary that the officer recognize with certainty that the object is contraband. Rather, the officer must only have probable cause to believe that the object is contraband. It defies logic and consistency, then, to hold that the plain feel doctrine, a corollary to the plain view exception, is so constricted as to prevent an officer from seizing an object that, as a result of a perfectly legal patdown, the officer has probable cause to believe is contraband. An officer should not be required to ignore the incriminating character of an object simply because that character became evident in the course of feeling, rather than seeing, the object, if the officer's actions in feeling the object, up to the point its incriminating character is revealed to the officer, are completely legal. Officer Clark stated that he realized that what he felt in the envelope was a "dime bag" of marijuana because he had felt marijuana packaged this way on hundreds of occasions. Surely, the clarity and degree of certainty of Officer Clark's perceptions exceeded the mere suspicions of the officer in Ross and provided probable cause for Officer Clark to believe that what he felt was contraband. The facts giving rise to probable cause must be viewed in the light of the officer's own experience and training. Cooper v. State, 480 So.2d 8, 11 (Ala.Cr.App. 1985). Sufficient probability, not certainty, moreover, is the touchstone under the Fourth Amendment. Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).
The present fact situation closely parallels the one in Huffman v. State, 651 So.2d 78 (Ala.Cr.App.1994), in which the officer recognized a "lump" in the appellant's pocket as a rock of crack cocaine. The officer testified: "I have made several other arrests in which crack cocaine was taken from the subject or found on the subject. I can tell the general outline of what a crack cocaine rock is." 651 So.2d at 81. This court upheld the trial court's denial of the appellant's motion to suppress, holding that the "patdown and subsequent seizure of drugs from the appellant did not exceed the scope of Terry." Huffman, 651 So.2d at 81.
Officer Clark testified that he felt through the appellant's clothes a leafy substance that he immediately believed to be marijuana. Unlike the officer in Huffman, who made "quite a few" drug arrests but not "a lot," Officer Clark testified that he had felt marijuana packaged this way on hundreds of occasions. Officer Clark did not violate the appellant's Fourth Amendment rights by moving his hands over the appellant's pocket "more than once." This action cannot be considered intrusive or the search a pretextual search because Officer Clark was entitled to make sure that the envelope he felt did not "contain a razor blade." A patdown search is not a pretextual search unless an officer continues to search after he is satisfied that no weapon is present. Officer Clark testified that he "simultaneously recognized" that what was in the appellant's pocket was not a razor blade but an envelope of marijuana. Because the officer "simultaneously recognized" that there was no razor blade in the appellant's pocket but an envelope of marijuana his search did not exceed the scope of a legal patdown search as established by Terry.
In reviewing a trial court's ruling on a motion to suppress evidence, this court must make all reasonable inferences and credibility choices in support of the trial court's ruling. Patterson v. State, 659 So.2d 1014 (Ala.Cr.App.1995). The trial court's finding that Officer Clark conducted a proper patdown search for weapons and that during that patdown, he felt something that was immediately apparent to him as a dime bag of marijuana is fully supported by the record. The Supreme Court in Dickerson, in using the term "immediately apparent," did not necessarily intend to limit the plain feel doctrine to one touch, regardless of whether continued touching is justified as a protective Terry patdown. It is fully consistent with constitutional principles to construe the "immediately apparent" requirement to allow the seizure of contraband based on probable cause acquired during a Terry patdown, regardless *217 of how many touches occurred, so long as the probable cause arises while the patdown is still justified. If, however, the item touched is first recognized as "apparently" contraband not an instant after the patdown is no longer justified, the evidence would be inadmissible.
Based on the above, the judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur except TAYLOR, P.J., who dissents with opinion.
TAYLOR, Presiding Judge, dissenting.
I disagree with the majority's holding in this case that the marijuana found on the appellant's person was correctly received into evidence because it was "immediately apparent" after a patdown of the appellant that he was carrying a controlled substance. This case is governed by the United States Supreme Court's holdings in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In Dickerson, the United States Supreme Court held that when an officer is conducting a patdown for weapons as allowed by Terry, and the officer feels an "object whose contour or mass makes its identity immediately apparent," the officer is justified in seizing the object under the "plain feel" doctrine.
Although the "plain feel" doctrine is in its infancy and there is very little caselaw to guide our analysis in this case, we must apply existing law. The "immediately apparent" standard of the "plain feel" doctrine applies here to the evidence presented at the suppression hearing. The United States Supreme Court in Dickerson, affirming the Minnesota Supreme Court's holding, stated:
"The Minnesota Supreme Court, after `a close examination of the record,' held that the officer's own testimony `belies any notion that he "immediately"' recognized the lump as crack cocaine. See [State v. Dickerson] 481 N.W.2d [840], at 844 [(Minn. 1992)]. Rather, the court concluded, the officer determined that the lump was contraband only after `squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'a pocket which the officer already knew contained no weapon. Ibid.

"Under the State Supreme Court's interpretation of the record before it, it is clear that the court was correct in holding that the police officer in this case over-stepped the bounds of the `strictly circumscribed' search for weapons allowed under Terry. See Terry, 392 U.S., at 26, 88 S.Ct., at 1882. Where as here, `an officer who is executing a valid search for one item seizes a different item,' this Court rightly `has been sensitive to the danger ... that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will.' Texas v. Brown, 460 U.S. [730], at 748, 103 S.Ct. [1535], at 1546-1547 [,75 L.Ed.2d 502 (1983)] (STEVENS, J., concurring in judgment). Here, the officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to `[t]he sole justification of the search [under Terry:] ... the protection of the police officer and others nearby.' 392 U.S., at 29, 88 S.Ct., at 1884. It therefore amounted to the sort of evidentiary search that Terry expressly refused to authorize, see id., at 26, 88 S.Ct., at 1882, and that we have condemned in subsequent cases. See Michigan v. Long, 463 U.S. [1032], at 1049, n. 14, 103 S.Ct. [3469], at 3480-3481 [,77 L.Ed.2d 1201 (1983)]; Sibron [v. New York], 392 U.S. [40], at 65-66, 88 S.Ct. [1889], at 1904, [20 L.Ed.2d 917 (1968)]."
Dickerson, 508 U.S. at 378, 113 S.Ct. at 2138-39. (Emphasis added.)
Based on the officer's testimony in this case, the contents of the envelope were not "immediately apparent" to him. Officer Clark testified on cross-examination that he had to slide his hand over the object in the appellant's pocket more than once to be "convinced that it was not a weapon." This conduct was the type specifically condemned by the United States Supreme Court in Dickerson.
*218 Moreover, the logic the Fifth Circuit applied in United States v. Ponce, 8 F.3d 989 (5th Cir.1993), must be applied here.
"Even if the officer's further probing were part of a protective search, Officer [Clark's] testimony belies any notion that he immediately recognized the [envelope] as contraband. At best, based on his general experience as a policeman, [Clark] believed the [envelope] might be an [envelope] containing a razor blade. Under Dickerson, [Clark's] speculation about what the bump might be is insufficient to justify the seizure of the contents of [the appellant's] pocket."
Ponce, 8 F.3d at 999.
To hold that a tiny envelope containing three ounces of marijuana can be seized as "immediately apparent" under Dickerson would be to eradicate in this particular case the Fourth Amendment protection recognized in Terry and applied in Dickerson, against warrantless, exploratory searches of the person. This case is factually indistinguishable from Dickerson. Based on the words of the United States Supreme Court in Dickerson, I believe that the trial court erred in denying the appellant's motion to suppress.