Pursuant to a plea agreement, the appellant, Roythron Blake, pleaded guilty to the unlawful possession of marijuana in the first degree, a violation of § 13A-12-213, Ala. Code 1975, and to the unlawful possession of a controlled substance, namely cocaine, a violation of § 13A-12-212, Ala. Code 1975. He was sentenced, as a habitual offender, to 12 years' imprisonment for each conviction; the sentences were to run concurrently. In addition, Blake was assessed a $2,000 fine for each conviction, pursuant to the Demand Reduction Assessment Act. See § 13A-12-281, Ala. Code 1975. When he entered the guilty plea, Blake expressly reserved the right to appeal the trial court's denial of his motion to suppress the State's evidence.
At the suppression hearing, Yancey Reynolds, an Anniston police officer, testified that on May 17, 1998, he and several officers with the Anniston Police Department established a driver's license checkpoint at the corner of 19th Street and Bancroft Street in Anniston. The officers stopped every car passing the checkpoint and asked all drivers to produce their licenses. At approximately 6:00 p.m., a car driven by Blake was stopped at the checkpoint. Officer Reynolds testified that Officer Allen George approached the driver's side of the car to ask Blake for his driver's license. When he neared the vehicle, Officer George signaled to the other officers that he could smell the odor of marijuana coming from the car. Officer Reynolds then moved closer to the vehicle, and he, too, smelled the odor of "burning marijuana" emanating from the vehicle. (R. 8.) Officer Reynolds testified that he was familiar with the odor of marijuana from his training and experience as a police officer; that he had smelled burning marijuana approximately 30 times as a police officer; and that he had been trained at the police academy in the detection of marijuana. At this point, the officers asked Blake and the passenger in his car, Freddy Scott, to get out of the vehicle and to step to the rear of the vehicle. According to Officer Reynolds, the officers wanted to separate Blake and Scott from their vehicle and to pat them down. Officer Reynolds noted that the previous week, the officers had found several guns in a vehicle that had been stopped for a driver's license check.
After Blake and Scott exited the vehicle, Officer Reynolds and Officer Tim Spears conducted a patdown for weapons. Officer Reynolds conducted the patdown of Scott, but found no weapons. Officer Spears, who also testified at the suppression hearing, stated that he conducted the patdown of Blake and also found no weapons. However, Officer Spears stated that while he was patting down the outer surface of Blake's front left pants pocket, still searching for weapons, he heard what sounded like the crinkling of a plastic sandwich bag and, at the same time, felt several small lumps, which he believed to be inside the bag. Officer Spears stated that, based on his training and experience as a police officer, he immediately recognized the small lumps as rocks of crack cocaine. He stated that he then reached into the pants pocket and pulled out a plastic bag that contained what appeared to be 12 to 14 individually wrapped rocks of crack cocaine. Officer Spears then placed Blake under arrest. Just after Blake was arrested, Officer George searched the interior of Blake's car. In the ashtray, Officer George found two small plastic bags of marijuana. No drug paraphernalia was found in the car. Officers Spears testified that although he did not actually smell the marijuana odor before or after patting *Page 1202 
Blake down, he saw Officer George's signal to him and to the other officers present indicating that Officer George smelled the odor of some sort of narcotics coming from Blake's car.
On appeal, Blake challenges the legality of the search of his automobile, where the marijuana was discovered, and the search of his person, where the cocaine was found. Blake does not challenge the legality of the driver's license checkpoint that resulted in the stop of his car.
Blake maintains that the search of his car was unlawful because, he says, it was based solely on the officers' smelling the odor of marijuana emanating from his vehicle. Notwithstanding Blake's argument in this regard, it is well settled under Alabama caselaw that the odor of burned marijuana emanating from an automobile is enough to provide probable cause to search the vehicle. See Smith v. State, 606 So.2d 174, 177 (Ala.Cr.App. 1992); Key v. State, 566 So.2d 251, 254 (Ala.Cr.App. 1990);Sterling v. State, 421 So.2d 1375, 1381 (Ala.Cr.App. 1982). Therefore, there was probable cause to search Blake's car once the officers smelled the odor of burned marijuana emanating from the vehicle. That probable cause existed independent of the results of the patdown Officer Spears conducted on Blake before the car was searched (i.e., the cocaine found on Blake's person was not used as the foundation for the search of his car); the discovery of the marijuana in Blake's car was inevitable, notwithstanding the alleged constitutional impropriety in the search of Blake's person. See Murray v. United States, 487 U.S. 533, 108 S.Ct. 2529,101 L.Ed.2d 472 (1988) (independent-source doctrine); and Nix v.Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (inevitable-discovery rule). Accordingly, even if we were to find that the patdown of Blake was unlawful, requiring suppression of the cocaine discovered on his person, Blake is not entitled to suppression of the marijuana evidence found in the search of his car.
Moreover, Blake is not entitled to suppression of the cocaine evidence. On appeal, Blake argues that the patdown of his person that led to the discovery of the cocaine in his pants pocket was unlawful because, he says, the police lacked a basis for suspecting that he might be armed, which is required to initiate a protective patdown under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889 (1968). However, in the trial court, Blake never challenged Officer Spears's justification for initiating the protective patdown. Rather, Blake challenged only the actions that Officer Spears took after he had initiated the patdown. At the suppression hearing, Blake specifically argued that Officer Spears's act of reaching into Blake's pocket to retrieve the rocks of crack cocaine exceeded the legitimate scope of a protective patdown permitted under Terry because, according to Blake, at the time Officer Spears reached into the pocket, he did not believe that the object he detected during the patdown was or could be a weapon. Because Blake did not challenge in the trial court Officer Spears's justification for initiating the patdown, he has waived inquiry into that specific issue for purposes of appellate review.
Our review of the record convinces us that Officer Spears did not exceed the parameters of Terry during the patdown of Blake. In Warren v. State, [Ms. CR-96-0793, October 2, 1998] ___ So.2d ___ (Ala.Cr.App. 1998), this court stated:
 "In Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the United States Supreme Court considered `whether police officers may seize nonthreatening contraband [e.g., illegal narcotics] detected during a *Page 1203 
protective patdown search of the sort permitted by Terry.' 508 U.S. at 373. Specifically, the Court addressed the question `whether contraband detected through the sense of touch during a patdown search may be admitted in evidence.' 508 U.S. at 371. The Court's answer was yes, so long as the officer who conducted the search was `acting within the lawful bounds marked by Terry at the time he gained probable cause to believe that the [item detected in the patdown] was contraband.' 508 U.S. at 378. See Huffman [v. State], 651 So.2d [78] at 80 [(Ala.Cr.App. 1994)]. Analogizing to the `plain-view' exception to the Fourth Amendment's warrant requirement and articulating a `plain-feel' doctrine, the Court in Dickerson stated:
 "`If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context. . . .
 "`. . . Terry itself demonstrates that the sense of touch is capable of revealing the nature of an object with sufficient reliability to support a seizure. The very premise of Terry, after all, is that officers will be able to detect the presence of weapons through the sense of touch and Terry
upheld precisely such a seizure. Even if it were true that the sense of touch is generally less reliable than the sense of sight, that only suggests that officers will less often be able to justify seizures of unseen contraband. Regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures.'
"508 U.S. at 375-76 (footnote omitted; emphasis added).
 "Because the Supreme Court in Dickerson made it clear that the plain-feel doctrine is a corollary to the plain-view exception — where probable cause is required (see, e.g., Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987)) — this court has recognized that the phrase `immediately apparent,' as it is used in Dickerson, is the equivalent of `probable cause.' See Allen v. State, 689 So.2d 212, 215-17 (Ala.Cr.App. 1996). In other words, to say that the identity of the object must be `immediately apparent' means that the officer has probable cause to believe that the object he or she feels during the course of a protective patdown is contraband; this probable cause must arise while the officer is still acting within the legitimate bounds of a protective patdown. Allen, 689 So.2d at 216-17; see Dickerson, 508 U.S. at 376. `It is fully consistent with constitutional principles to construe the "immediately apparent" requirement to allow the seizure of contraband based on probable cause acquired during a Terry patdown . . . so long as the probable cause arises while the patdown is still justified.' Allen, 689 So.2d at 216-17 (emphasis added); see Dickerson, 508 U.S. at 376 (`the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures'). Within the context of the `plain-feel' doctrine, then, an officer exceeds the legitimate scope of a protective patdown if the officer continues to *Page 1204 
manipulate or seizes an object felt through a suspect's clothing after he is convinced that what he has felt was not a weapon. Allen, 689 So.2d at 216-17; see Dickerson, 508 U.S. at 378-79.
 "It is well settled that probable cause may arise from a combination of several factors: `Whether there is probable cause to merit a warrantless search and seizure is to be determined by the totality of the circumstances.' State v. Stallworth, 645 So.2d 323, 325 (Ala.Cr.App. 1994) (emphasis added); see Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). `The facts giving rise to probable cause must be viewed in the light of the officer's own experience and training.' Allen, 689 So.2d at 216. Thus, in cases where the `plain-feel' doctrine is a consideration, the officer, in making the probable cause determination, is not required to `bracket off' the information acquired through his sense of touch from the information he has acquired from other sources. We implicitly recognized this in Allen, supra, where the officer, during a protective patdown of the defendant's outer clothing, moved his hand over an envelope in the defendant's pocket in an effort to determine whether the envelope contained a razor blade and, in so doing, felt a leafy substance in the envelope that he believed to be marijuana. This court considered whether the officer was still acting within the lawful bounds of a protective patdown under Terry when he `acquired the information, through touch and through his observation of other attendant circumstances, that gave him probable cause to believe that what he felt through the appellant's clothing — the envelope and its contents — was contraband.' Allen, 689 So.2d at 215 (emphasis added).
 "`"Probable cause exists where all the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched."' Stallworth, 645 So.2d at 325, quoting Sheridan v. State, 591 So.2d 129, 130 (Ala.Cr.App. 1991). Probable cause does not require certainty, but rather requires a substantial probability of criminal activity. Gates, 462 U.S. at 243-44 n. 13. See Allen, 689 So.2d at 216 (`Sufficient probability, not certainty . . ., is the touchstone under the Fourth Amendment.')."
___ So.2d at ___ (footnote omitted).
Here, Officer Spears's tactile perception of the small lumps while patting the outer surface of Blake's pants pocket, combined with the attendant circumstances known to Officer Spears at that time, provided Officer Spears with probable cause to believe that the lumps were rocks of crack cocaine before he reached into Blake's pocket to retrieve them. Officer Spears testified that he was still feeling for weapons when he felt the lumps in Blake's pocket. At the same time he felt the lumps in Blake's pocket, Officer Spears also heard what sounded like the crinkling of a plastic sandwich bag in the pocket; the lumps were apparently inside this bag. Officer Spears testified that, based on his experience as a police officer, he immediately recognized the lumps as rocks of crack cocaine. Even before he felt the lumps in Blake's pocket, Officers Spears already had reason to associate Blake with illegal drugs, because he had seen Officer George signal to him and the officers at the roadblock that the odor of some sort of narcotic was emanating from Blake's car. We find that, given the totality of the circumstances, Officer Spears had probable cause to believe that the lumps he felt through Blake's clothing were rocks of crack cocaine. Because Officer Spears was feeling for weapons at the time he felt the lumps and recognized them as crack *Page 1205 
cocaine, the probable cause arose while he was acting within the permissible scope of a protective patdown conducted pursuant to Terry. See Dickerson, 508 U.S. 366,113 S.Ct. 2130; Warren, ___ So.2d at ___; Allen, 689 So.2d at 215-17. There was probable cause, then, both to arrest Blake for possession of cocaine and to seize the cocaine from his pocket. Furthermore, although there was (as we noted above) probable cause to search Blake's car based on the odor of burned marijuana emanating from the vehicle, the search of Blake's car may also be justified as an automobile search incident to the lawful arrest (for possession of cocaine) of an occupant of the automobile. SeeNew York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d (1981).
Furthermore, even if we were to consider that Officer Spears's act of reaching into Blake's pocket overstepped the protective-patdown rationale of Terry, and even if we were accept as sound Blake's argument (albeit unpreserved) that Officer Spears lacked a basis for suspecting that Blake might be armed and was therefore not justified in initiating the patdown, we would conclude that the search of Blake's person was legal because there was probable cause to arrest Blake once the officers smelled the odor of burning marijuana emanating from his vehicle. This court has recognized that, in appropriate circumstances, an officer's detection of the odor of marijuana may provide probable cause to search or to arrest. In State v. Mathews, 597 So.2d 235
(Ala.Cr.App. 1992), we stated:
 "`It appears to be generally accepted that the smell of marijuana in its raw form or when burning is sufficiently distinctive to come within the rule of . . . Johnson [v. United States, 333 U.S. 10, [68 S.Ct. 367, 92 L.Ed. 436] (1948), that probable cause to believe that an illegal substance is present may be established by smell]. Consequently, the courts have found probable cause to search when the distinctive odor of marijuana is found emanating from a particular place and have likewise found probable cause to arrest when the odor was detected coming from a particular person.'
 "[W.LaFave, 2 Search and Seizure] § 3.6(b) [(2d ed. 1987)](footnotes omitted). See, e.g., State v. Betterton, 527 So.2d 743 (Ala.Cr.App. 1986), aff'd, 527 So.2d 747
(Ala. 1988). `The odor of fresh marijuana or marijuana smoke, standing alone, has . . . been held or recognized as providing probable cause to conduct warrantless searches of . . . persons and their clothing.' Donald M. Zupanec, Annotation, Odor of Narcotics as Providing Probable Cause for Warrantless Search, 5 A.L.R.4th 681, 686 (1981) (footnotes omitted). See also State v. Compton, 13 Wn. App. 863, 538 P.2d 861, 861-62 (1975) (wherein the court held that, because the officer was qualified to identify the smell of raw or burning marijuana, his detection of the smell of such contraband provided `him sufficient information to form a reasonable belief that the crime of unlawful possession of a controlled substance was being committed in his presence')."
597 So.2d at 237.
As we stated earlier, this court has consistently held that the odor of burned marijuana emanating from an automobile can supply probable cause to search the vehicle. However, we have not had cause previously to directly address the question whether the odor of burned marijuana emanating from an automobile may be enough to provide probable cause to arrest the occupants of the vehicle. Although this issue has not been addressed directly in a reported decision in this state, numerous cases from other jurisdictions have held that the odor of burned marijuana alone, or the odor of burned marijuana coupled with the presence of smoke, emanating from an automobile may constitute probable cause to arrest the occupants of the vehicle for possession of a controlled *Page 1206 
substance. See, e.g., Brunson v. State, 327 Ark. 567,940 S.W.2d 440 (1997), cert. denied, 522 U.S. 898, 118 S.Ct. 244,139 L.Ed.2d 173 (1997) (odor of marijuana or its smoke emanating from a legally stopped automobile constituted probable cause to arrest all four occupants of the vehicle); State v. Mitchell,167 Wis.2d 672, 482 N.W.2d 364 (1992) (odor of burned or burning marijuana and presence of smoke inside an automobile provided probable cause to arrest both the driver of the vehicle and his passenger); State v. Hammond, 24 Wn. App. 596, 603 P.2d 377
(1979) (where officers detected odor of burning marijuana coming from an automobile, they had probable cause to arrest the vehicle's occupants); Ford v. State, 37 Md. App. 373,377 A.2d 577, cert. denied, 281 Md. 737 (1977) (odor of burning marijuana emanating from an automobile with two occupants constituted probable cause to arrest the vehicle's driver); Dixon v. State,343 So.2d 1345 (Fla.Dist.Ct.App. 1977) (odor of burning marijuana and sight of smoke emanating from an automobile constituted probable cause to arrest the driver and the two occupants of the vehicle); Berry v. State, 316 So.2d 72 (Fla. Dist.Ct.App. 1975) (odor of burning marijuana emanating through open window of parked automobile gave officer probable cause to arrest all four occupants of the vehicle). See also State v.Overby, 590 N.W.2d 703 (N.D. 1999) (officer had probable cause to arrest defendant, the sole occupant of an automobile, where officer smelled odor of burning marijuana emanating from vehicle during traffic stop).
In Brunson, supra, where the officer smelled the odor of marijuana or marijuana smoke emanating from an automobile, the Arkansas Supreme Court stated:
 "Quite simply, the smell of the marijuana or its smoke emanating from a vehicle constitutes facts and circumstances sufficient to warrant a person of reasonable caution to believe that a controlled substance has been or is being possessed or delivered or both, and, thus, that a violation of law has occurred or is occurring."
327 Ark. at 571, 940 S.W.2d at 441-42.
In Mitchell, supra, the Wisconsin Supreme Court held that a police officer who smelled burned or burning marijuana and saw smoke inside a parked automobile had probable cause to arrest both occupants of the vehicle, including the defendant, who was the car's driver. The Court stated:
 "Based on the presence of both the odor of marijuana and the smoke, Officer Smith had reason to believe that defendant, his passenger, or both had been smoking marijuana, and thus possessing marijuana. The fact that there were two occupants in the vehicle is not fatal to a finding of probable cause to arrest defendant because probable cause does not mandate that it is more likely than not that the defendant committed the offense. We hold that, based on the marijuana odor and smoke inside the vehicle, Officer Smith had probable cause to arrest defendant and therefore the arrest was lawful."
167 Wis.2d at 684, 482 N.W.2d at 368-69 (citation omitted).
The odor of burning marijuana emanating from Blake's car alerted the officers to the fact that marijuana was likely present or that it had been burned only shortly before and, also, that the car's two occupants — particularly Blake, the driver in "control" of the car — likely possessed marijuana. This provided probable cause to arrest Blake for possession of marijuana. Under the facts of this case, where two persons were sitting in the front seat of an automobile, we do not believe that an individualized suspicion was required to arrest either Blake or his passenger. To require such individual suspicion in all cases would be to say that even where the odor of burning marijuana is emanating from the relatively close confines of an automobile — therefore clearly justifying a search of the automobile — if the occupants of the vehicle have the foresight to quickly secrete the controlled substance in their pockets, they *Page 1207 
may drive away after the search of the vehicle proves fruitless. SeeBrunson, supra, 327 Ark. at 572, 940 S.W.2d at 442; also 3 W. LaFave, Search and Seizure § 7.2(e) at 508 (3d ed. 1996).
A warrantless search preceding arrest is reasonable under the Fourth Amendment, so long as probable cause to arrest existed before the search and the arrest and search are substantially contemporaneous. Rawlings v. Kentucky, 448 U.S. 98, 111,100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). See United States v. Robinson,414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Chimel v.California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The search of Blake's person (and the seizure of the cocaine from his pocket) was, therefore, valid as a search incident to establishment of probable cause to arrest, because the officers had probable cause to arrest Blake for possession of marijuana before he was even patted down by Officer Spears, and the arrest and search were sufficiently contemporaneous. This arrest would also justify the subsequent search of Blake's car. New York v.Belton, supra.
For the reasons we have stated above, we conclude that the trial court did not err in denying Blake's motion to suppress. The judgment of the trial court is affirmed.
AFFIRMED.
McMillan, Cobb, and Baschab, JJ., concur; Fry, J., concurs in the result only.
 *Page 419