BELSOME, J.,
dissenting.
b The unarmed seventeen year old was killed instantaneously when the first bullet tore through his torso. As he lay dead on the pavement, three additional shots were fired into the back of his skull, face and lower back. The exact sequence of events that led to the death of Corey Horton continues to generate discussion, debate and speculation of what happened that August afternoon in 1991.
After weighing the testimony of seven witnesses and evaluating the exhibits entered into evidence over a three-day trial, the presiding judge found that Sgt. Fan-guy used excessive force in subduing Corey Horton. The majority opinion disagrees and dismisses the factual findings of the trial court, reversing the judgment.
I dissent.
To warrant a reversal, the majority painstakingly compares what they believe may have been borne out by the evidence to the reasons issued by the trial |2court. The exercise is completed with the proclamation that “the totality of the evidence, and the inferences to be drawn from it, does not preponderate in favor of either the plaintiff or the defendants.” This statement suggests that reasonable minds differ on the significance of the evidence. If so, the trier of fact cannot be clearly wrong or manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Ordinarily, a trial court decision outlines some of the relevant factors that impressed and influenced the outcome of the trial. Rarely does it include every detail. The degree of analysis employed by the majority, suggests that trial judges must use the strongest language in accepting, rejecting or discounting the influence of testimony or an exhibit. Otherwise, speculation and supposition will be applied when attempting to determine what the trial court meant when it rejected or accepted testimony.
Moreover, great discretion is afforded the trial judge because only they have the opportunity to see and hear all facets of the record. Their front row seats afford them the ability to draw conclusions about the candor or lack there of on the part of the particular witness, party or attorney. They and they alone have first hand knowledge of the tone, tenor and volume of a witness’s response. Only the trial judge is in the position to weigh the eye contact, facial expressions and body language of each witness as the trial develops. Nonverbal communication can be as important as the verbal utterances reflected in the cold transcript. See, Canter v. Koehring Co., 283 So.2d 716 (La.1973).
The difference of opinion of the appellate panel is simply not enough to alter the findings of the trial court. In Ambrose v. New Orleans Police Dept. Ambulance Service, 689 So.2d 216 (La.1994), the Supreme Court cautioned the appellate court not to re-weigh the evidence or to substitute its factual findings for that of the trial court’s. Accordingly, it is this court’s | sconstitutional duty to review the facts, not to decide if it, as a reviewing court, would have found the facts differently. Id. at 221. Although the majority acknowledges that great deference is owed the trial court, it appears they chose not to afford such deference in this case. While the majority’s rendition of the relevant facts seems plausible, it seems no more reasonable than that of the factfinder’s. Therefore, the longstanding jurisprudence controlling the appellate court’s authority *218 as a court of review mandates an affirmation in this matter.
The record reflects a reasonable factual basis for the trial court’s findings and therefore I would affirm the trial court.