COURT OF APPEALS
DECISION
DATED AND FILED

July 28, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2021AP938-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CF711

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

V.

QUAHEEM O. MOORE,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Wood County: NICHOLAS J. BRAZEAU, JR., Judge. *Affirmed*.

Before Blanchard, P.J., Graham, and Nashold, JJ.

¶1   GRAHAM, J.  The State appeals a circuit court order granting Quaheem Moore's motion to suppress physical evidence obtained during a search of Moore's person following a traffic stop.  The State argues that there was probable cause to arrest Moore based on the odor of marijuana emanating from his vehicle,

among other facts, and therefore, that the search was a lawful search incident to arrest under ***State v. Secrist***, 224 Wis. 2d 201, 589 N.W.2d 387 (1999) (stating that the odor of marijuana in a vehicle may provide probable cause to arrest the driver). We disagree and affirm the circuit court's suppression order.

## BACKGROUND

¶2      In the early morning hours of November 17, 2019, Officer Libby Abel initiated the traffic stop that led to Moore's arrest. The following summary of undisputed facts is derived from the testimony of the officers given at the suppression hearing, which was not meaningfully disputed, and the circuit court's findings of fact. It is supplemented by our observations from Officer Mack Scheppler's body camera footage.[1] Our observations are all consistent with the facts found by the circuit court.

¶3      Abel stopped Moore's vehicle for speeding. As Moore's vehicle turned onto a side street and pulled over, Abel observed the vehicle hit the curb and "some sort of liquid fly out of the driver's side window." She approached the vehicle and made contact with Moore, who was its driver and sole occupant. As she did so, Abel detected an odor that she believed to be raw marijuana.

¶4      Abel returned to her squad car to request backup. Shortly thereafter, Officer Scheppler arrived on scene. He approached Moore's vehicle and conferred with Moore through the passenger side window.

---

[1] Moore's attorney introduced the body camera footage during the suppression hearing. The prosecutor initially objected on the ground that he did not "understand how [the footage was] relevant in light of the [officers'] testimony," which had already been offered at the hearing. The circuit court overruled the objection and the footage was played during the hearing.

¶5      Abel returned to Moore's vehicle, asked Moore to step out, and patted down his outer clothing for weapons.[2]  During the pat down, Abel discovered a vaping device in one of Moore's pockets.  She asked Moore if the pen was "a THC vape,"[3] and Moore did not immediately respond.  After Abel repeated her question, Moore said that the device was "a CBD vape."[4]  Abel did not ask any follow-up questions or examine the device.

¶6      The officers' discussions with Moore continued.  Abel told Moore that she had witnessed some sort of liquid being thrown out of the driver's side window and that she had observed liquid on the driver's side of the vehicle, "just by the window" and nowhere else.  Moore denied having thrown any liquid from the vehicle.  Abel asked Moore whether he had been drinking, and he said that he had not.  Moore said that the vehicle was not his, that he was borrowing it from his brother, and that his brother had taken it to the car wash earlier that day.  The officers never determined what the liquid was, but Abel testified that it was odorless.

---

[2] During an investigative stop, if an officer has reasonable suspicion to believe a person is dangerous and may have immediate access to weapons, the officer is authorized to conduct a pat down of the person's outer clothing to determine whether the person is armed. **State v. Johnson**, 2007 WI 32, ¶¶22-23, 299 Wis. 2d 675, 729 N.W.2d 182 (citing **Terry v. Ohio**, 392 U.S. 1, 21 (1968) and other authorities).  Moore does not challenge the legality of Abel's pat down.

[3] Tetrahydrocannabinol (THC) is a controlled substance, and is the active ingredient in marijuana.  *See* U.S. Food & Drug Administration, FDA Regulation of Cannabis and Cannabis-Derived Products, Including Cannabidiol (CBD), https://www.fda.gov/news-events/public-health-focus/fda-regulation-cannabis-and-cannabis-derived-products-including-cannabidiol-cbd     (last visited July 18, 2022).  We refer to THC and marijuana interchangeably throughout this opinion.

[4] Cannabinol (CBD) is a derivative of the hemp plant.  Consumption of CBD products containing no more than trace amounts of THC is lawful in Wisconsin.  U.S. Food & Drug Administration, *supra* n.3; *see also* Wisconsin Department of Agriculture Trade and Consumer Protection, "Hemp Research Program," https://datcp.wi.gov/Pages/Programs_Services/Hemp.aspx? (last visited July 18, 2022).

¶7 Abel informed Moore that she "smelled the odor of marijuana coming from" his vehicle. Moore expressed disbelief. Scheppler indicated that he could smell it too. Moore tugged on the front of his sweatshirt, expanding it outwards, and then stepped closer to the officers, apparently to show them that they could not smell marijuana on his person. Abel acknowledged that she could not "smell it right now," and Scheppler said that the odor was "coming out of the car." Moore repeated that the vehicle was not his and that the officers knew he did not smell of marijuana.

¶8 The officers then informed Moore that they were going to conduct a search of his person based on "the odor of marijuana" coming from the vehicle. Scheppler instructed Moore to place his hands on his head and began thoroughly searching him.[5] Scheppler did not initially discover anything of evidentiary value on Moore, and they proceeded to make small talk. Then, at some point, Scheppler noticed that Moore's belt buckle "was sitting a little higher on his pants." Scheppler asked Moore to place his hands on his head so he could search Moore's belt and zipper area.[6] Moore complied. Scheppler began searching Moore's zipper area, and then shouted to Abel that he felt a plastic bag with what he believed was some sort of substance inside of it. Abel placed Moore in handcuffs.

---

[5] While Scheppler searched Moore's person, Abel searched Moore's vehicle. Abel's search of the vehicle ultimately uncovered a small amount (less than 1/10 of a gram) of marijuana, referred to as "shake," on the passenger floor of the vehicle. Moore's motion to suppress did not challenge the legality of Abel's search of the vehicle and we discuss it no further.

[6] The circuit court treated Scheppler's discontinuous search of Moore's person as a single search, and neither party challenges this aspect of the circuit court's analysis. Therefore, following the lead of the parties and the circuit court, we analyze Scheppler's search of Moore as a single search.

¶9 Scheppler ultimately discovered two plastic baggies containing what appeared to be controlled substances in a concealed pocket behind the zipper of Moore's pants. The baggies were later determined to contain cocaine and fentanyl.

¶10 The State charged Moore with possession with intent to deliver narcotics in violation of WIS. STAT. §§ 961.41(1m)(a), 939.50(3)(e), 939.62(1)(c), and 961.48(1)(b) (2019-20)[7] as well as possession with intent to deliver more than one but less than five grams of cocaine in violation of §§ 961.41(1m)(cm)1r., 939.50(3)(f), 961.48(1)(b), and 939.62(1)(c), both as second and subsequent offenses.

¶11 Moore moved to suppress the evidence obtained during the search. Following an evidentiary hearing and briefing by the parties, the circuit court granted Moore's motion. The court reasoned as follows. Scheppler's warrantless search of Moore could be lawful only if it was a search incident to a lawful arrest; therefore, the court's analysis focused on whether there was probable cause to arrest Moore at the time of the search.[8] The court acknowledged that, under *Secrist*, 224 Wis. 2d 201, the odor of marijuana in a vehicle, alone, may give officers probable cause to arrest the driver, but the court concluded that the officers in this case failed to link the odor to Moore and Moore offered innocent explanations for the odor. The court dismissed as largely irrelevant Abel's testimony that she witnessed a liquid spray coming from the driver's side window because it "was never shown to … bear on any question presented in [Moore's] motion." Likewise, the court found

---

[7] All references to the Wisconsin Statutes are to 2019-20 version.

[8] During the circuit court proceedings, the State argued that it was unnecessary to show that the officers had probable cause to arrest Moore at the time that Scheppler searched him, either because the search was merely an additional pat down search for weapons, *see Johnson*, 299 Wis. 2d 675, ¶¶22-23, or because Moore gave voluntary consent to the search, *see State v. Phillips*, 218 Wis. 2d 180, 577 N.W.2d 794 (1998). The State does not renew these arguments on appeal.

that Moore's hitting the curb when pulling over was irrelevant because "[s]igns of intoxication were not emphasized in the [officer's] testimony." Ultimately, the court concluded the officers lacked probable cause to arrest Moore. The State appeals.

## DISCUSSION

¶12 The review of an order granting or denying a suppression motion presents an issue of constitutional fact. *State v. Johnson*, 2013 WI App 140, ¶6, 352 Wis. 2d 98, 841 N.W.2d 302. We uphold the circuit court's findings of fact unless they are clearly erroneous, and we independently review the application of constitutional principles to those facts. *Id.*

¶13 The United States and Wisconsin Constitutions both prohibit unreasonable searches and seizures.[9] Under both provisions, warrantless searches and seizures are presumptively unreasonable. *State v. Payano-Roman*, 2006 WI 47, ¶30, 290 Wis. 2d 380, 714 N.W.2d 548; *Riley v. California*, 573 U.S. 373, 382 (2014). "'In the absence of a warrant, a search or seizure is reasonable only if it falls within a specific exception to the warrant requirement.'" *Riley*, 573 U.S. at 382 (quoting *Kentucky v. King*, 563 U.S. 452, 460 (2011)). The State bears the

---

[9] The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV. The Wisconsin Constitution similarly provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." WIS. CONST. ART. I, § 11. Wisconsin courts have traditionally interpreted these two constitutional provisions in concert. *State v. Secrist*, 224 Wis. 2d 201, 208, 589 N.W.2d 387 (1999).

6

burden of showing by a preponderance of the evidence that a warrant exception applies. *State v. Phillips*, 2009 WI App 179, ¶7, 322 Wis. 2d 576, 778 N.W.2d 157.

¶14     Searches incident to a lawful arrest are a recognized exception to the warrant requirement. *See United States v. Robinson*, 414 U.S. 218, 235 (1973); *Chimel v. California*, 395 U.S. 752, 762-63 (1969). For an arrest to be lawful, it must be supported by probable cause. *Secrist*, 224 Wis. 2d at 212. "'[A] search may be incident to a *subsequent* arrest'" if probable cause to arrest existed prior to, and independent from the fruits of, the search of the suspect's person. *State v. Sykes*, 2005 WI 48, ¶¶15-16, 279 Wis. 2d 742, 695 N.W.2d 277 (emphasis added) (quoting *State v. Kiekhefer*, 212 Wis. 2d 460, 484, 569 N.W.2d 316 (Ct. App. 1997)).

¶15     Probable cause to arrest exists "when the totality of the circumstances within [an] officer's knowledge at the time of the arrest would lead a reasonable police officer to believe that *the defendant* probably *committed a crime*." *Sykes*, 279 Wis. 2d 742, ¶18 (emphasis added). Probable cause to arrest thus requires facts that would lead to an objectively reasonable belief that a crime was committed, and further, that the defendant was the person who committed the crime. *See Secrist*, 224 Wis. 2d at 214.

¶16     It can be difficult to articulate the precise quantum of evidence needed for probable cause. *See State v. Young*, 2006 WI 98, ¶22 & n.8, 294 Wis. 2d 1, 717 N.W.2d 729 (stating that probable cause is a "commonsense, nontechnical conception[] that deals with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act") (citing *Ornelas v. United States*, 517 U.S. 690, 695 (1996)). Probable cause requires that guilt be more than a possibility. *See Village of Elkhart Lake v. Borzyskowski*, 123

Wis. 2d 185, 189, 366 N.W.2d 506 (Ct. App. 1985). However, it does not require proof of guilt beyond a reasonable doubt, or even that guilt be more likely than innocence. *State v. Mitchell*, 167 Wis. 2d 672, 681-82, 482 N.W.2d 364 (1992).

¶17 In determining whether probable cause exists, our analysis is objective. *State v. Lange*, 2009 WI 49, ¶20, 317 Wis. 2d 383, 766 N.W.2d 551. While our inquiry hinges on the facts and circumstances officers were subjectively aware of, and are able to testify to, we are "'not bound by the officer[s'] subjective assessment[s] or motivation[s].'" *State v. Kutz*, 2003 WI App 205, ¶12, 267 Wis. 2d 531, 671 N.W.2d 660 (internal citations omitted). Whether an officer subjectively drew an inference of guilt based on the facts presented is irrelevant so long as a reasonable officer could have done so. *See State ex rel. McCaffrey v. Shanks*, 124 Wis. 2d 216, 236, 369 N.W.2d 743 (Ct. App. 1985).

¶18 The issue presented in this appeal is whether the officers' testimony that they smelled marijuana emanating from the vehicle, either alone or coupled with other facts and inferences available to the officers, gave them probable cause to arrest Moore, who was the driver and sole occupant. Both parties agree that *Secrist* controls our analysis. We describe the facts and analysis from that case at length and then apply its framework to assess whether the officers had probable cause to arrest Moore prior to the search of his person.

## I. *State v. Secrist*

¶19 In *Secrist*, the defendant, who was the driver and sole occupant of his vehicle, drove up to an officer to ask for directions. *Secrist*, 224 Wis. 2d at 204. The officer detected the odor of burnt marijuana emanating from the vehicle, and he arrested Secrist. *Id.* at 204-05. The officer then searched Secrist's vehicle and

discovered marijuana. *Id.* Secrist moved to suppress the evidence, arguing that the officer lacked probable cause to arrest him and to search his vehicle. *Id.* at 205.

¶20 The issue in *Secrist* was whether the odor of marijuana, *alone*, provided probable cause to arrest Secrist for a marijuana-related offense. In considering that issue, our supreme court distinguished between probable cause to believe that a crime has been committed and probable cause to believe it was the defendant who committed the crime. *Id.* at 217-18. The court explained that "[t]he *unmistakable* odor of marijuana" coming from a vehicle will generally provide probable cause to believe that a crime has been committed. *Id.* at 210 (emphasis added). However, to establish probable cause to arrest, officers must also be able to "link" the odor to a particular person, such that they have probable cause to believe it was *this person* who committed the crime. *Id.* at 217-18. In *Secrist*, for example, the strong odor of burnt marijuana, which emanated from a vehicle driven and occupied solely by the defendant, was sufficient to link the defendant to the odor and, in turn, supplied probable cause to arrest. *Id.* at 218.

¶21 In assessing whether the odor was "unmistakable," *Secrist* directs courts to examine whether the officer was "qualified" to identify the odor, "as well as" the odor's "strength, its recency, and its source." *Id.* at 216. The *Secrist* court emphasized that "[i]t is important in these cases to determine the extent of the officer's training and experience in dealing with the odor of marijuana[.]" *Id.* This is so because "[t]he extent of the officer's training and experience bears on the officer's credibility in identifying the odor" and, in turn, whether the odor identified was "unmistakabl[y]" that of marijuana. *Id.* at 216. Additionally, although "corroboration by another officer is not required, corroboration can be helpful in firming up the reasonableness of the officer's judgments." *Id.* at 216. In *Secrist*, the officer credibly identified the odor as marijuana based on his testimony that he

"recognized the odor from his police training and his frequent contact with marijuana over [his] 23 years [of] experience as a police officer." *Id.* at 204, 218-19.

¶22     In assessing the "linkage" between the odor and the defendant, the *Secrist* court stated that "[t]he strong odor of marijuana in an automobile will *normally* provide probable cause to believe that the driver and sole occupant of the vehicle is linked to the drug." *Id.* at 218 (emphasis added). *Secrist* identified other facts that may increase or decrease the linkage. Among other things, signs of impairment or suspicious behavior increase the linkage, while a "reasonable [innocent] explanation for the odor" will decrease the linkage. *Id.* at 217-19.

¶23     To summarize, *Secrist* stands for the proposition that the odor of marijuana, alone, may provide probable cause to arrest when the odor is "unmistakable" to a person with relevant training or experience, and the odor is linked to a specific person. *Id.* at 217-18.

## II.  Probable Cause to Arrest

¶24     The question of whether there was probable cause to arrest "'is a question of constitutional fact involving the application of federal constitutional principles which this court reviews independently of the conclusions of the circuit court.'" *Id.* at 208 (quoting *Mitchell*, 167 Wis. 2d at 684). As stated above, the State carries the burden of establishing that officers had probable cause to believe that Moore was committing, or had committed, a crime. *State v. Blatterman*, 2015 WI 46, ¶34, 362 Wis. 2d 138, 846 N.W.2d 26 (citing *Lange*, 317 Wis. 2d 383, ¶19).

¶25 Here, the State asserts that the officers had probable cause to arrest Moore for possession of marijuana.[10] The State contends that the officers had probable cause to arrest because they detected an odor they believed to be marijuana in the vehicle, and Moore was its driver and sole occupant. The State also points to several additional facts, and what it argues are the reasonable inferences to be drawn from those facts, to buttress a determination of probable cause.

¶26 In the analysis that follows, we examine whether the officers had probable cause to believe that a crime had been committed. We first assess whether the officers had probable cause to believe a crime was committed based solely on the odor they detected. Because the odor was not unmistakably that of marijuana, as *Secrist* requires, we conclude that they did not. We then consider whether, based on the totality of circumstances, other facts known to the officers provided probable cause to believe a crime had been committed. Again, we conclude they did not. Because we conclude that the officers lacked probable cause to believe a crime had been committed, we do not address the parties' remaining arguments about whether there was probable cause to believe that Moore was the person who committed a crime.

### A. Probable Cause to Believe a Crime Was Committed Based on the Odor Alone

¶27 As discussed above, a necessary component of probable cause to arrest is probable cause to believe a crime has been committed. *Secrist* recognized that the odor of marijuana, alone, will generally suffice to establish probable cause to believe that a crime has been committed. *Secrist*, 224 Wis. 2d at 217. However,

---

[10] WISCONSIN. STAT. § 961.41(3g)(e) prohibits the possession of marijuana. The elements for possession of marijuana include: (1) possessing marijuana and (2) knowing or believing it to be marijuana. *See* WIS JI—CRIMINAL 6030.

*Secrist* requires that the odor of marijuana be "unmistakable" for the odor alone to have such an effect. *Id.* at 216.

¶28    Here, the State has failed to establish that the odor detected was unmistakably that of marijuana for two reasons. First, the State did not offer any evidence at the suppression hearing that the officers had training or experience that enabled them to reliably identify the odor of marijuana. As discussed above, to assess whether the odor was unmistakably that of marijuana, *Secrist* directs courts to assess the officers' testimony regarding their training and experience in identifying the odor of marijuana, as well as its strength, recency, and source. *Id.* at 216.

¶29    In this case, both officers testified that they detected the odor of marijuana coming from Moore's vehicle. That both identified the odor as marijuana, as opposed to just one of them, in itself strengthens the identification. *See id.* Critically, however, the State did not elicit testimony or any other evidence that either officer had any training or experience relating to the odor of marijuana. Although the State elicited testimony that both officers had conducted at least one traffic stop prior to the traffic stop in question, neither officer was asked about their training or experience in identifying the odor of marijuana, whether raw, burnt, or in liquid form; in identifying the strength, recency, or source of marijuana; or, in distinguishing the odor of marijuana from other odors, including CBD. The State elicited no testimony that either officer had even smelled the odor of marijuana prior to stopping Moore. *Contra id.* at 204, 218-19 (the officer "recognized the odor from his police training and his frequent contact with marijuana over [his] 23 years [of] experience as a police officer."). *Secrist* directs that such testimony is required when determining whether the unmistakable odor of marijuana alone provides probable cause to arrest.

12

¶30     Second, the facts suggested a potential innocent explanation for the odor in the vehicle—that Moore vaped CBD.  In briefing to the circuit court, the State asserted that the odor of CBD is indistinguishable from that of marijuana, and the circuit court accepted this assertion of fact as true.  Although there is no evidence in the record that would support or undermine this proposition, we will also accept the State's assertion as a concession of fact for the purpose of this case.  Thus, the officers were confronted with two possible explanations for the odor:  legal CBD or illegal marijuana.  If CBD, which is legal, produces an odor that is indistinguishable from THC, which is illegal, then the odor of CBD may be "mistaken" for the odor of marijuana.

¶31     The State correctly asserts that the officers were not required to accept Moore's explanation at face value.  When faced with two competing inferences, officers are free to draw the inference favoring guilt.  *See State v. Colstad*, 2003 WI App 25, ¶14, 260 Wis. 2d 406, 659 N.W.2d 394; *State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125.  However, with no discernible ability to identify the odor of marijuana or distinguish it from CBD, the officers could not rule out CBD, or even meaningfully undermine it, as the source of the odor.  Although officers typically are not required to definitively rule out a suspect's innocent explanation, *Secrist* requires that the odor of marijuana be "unmistakable" for the *odor alone* to supply officers with probable cause to believe a crime was committed.

The odor cannot be unmistakably that of marijuana if officers are unable to rule out an innocent explanation for the odor.[11]

¶32    Here, the State has not proven that the odor was unmistakably that of marijuana. Therefore, under *Secrist*, the odor alone did not supply the officers with probable cause to believe that a crime was committed.

### B.  Probable Cause to Believe a Crime Was Committed Based on the Totality of the Circumstances.

¶33    We now consider whether other facts known to the officers, in combination with an odor that might have been marijuana, provided probable cause to believe a crime had been committed. In addition to the not "unmistakable" odor, the State points to Moore's possession of a vaping device and his admission that he used it to vape CBD, as well as Abel's observations of Moore's vehicle as it pulled to the curb.

¶34    We begin with Moore's possession of a vaping device. It is common knowledge that such devices can be used to vape legal substances including tobacco and CBD, as well as marijuana. Although the State made arguments about the device during the circuit court proceedings, it did not elicit any facts at the suppression hearing that linked the device to marijuana. Specifically, there was no

---

[11]    Although there may be tension between *Secrist*'s requirement that the odor of marijuana be "unmistakable" and the quantum of evidence normally required to establish probable cause, *see* *State v. Mitchell*, 167 Wis. 2d 672, 681-82, 482 N.W.2d 364 (1992) (defining probable cause as a belief that a crime was probably committed, not proof of a crime beyond a reasonable doubt), we are not at liberty to disregard it. *See* *Zarder v. Humana Ins. Co.*, 2010 WI 35, ¶¶57-58, 324 Wis. 2d 325, 782 N.W.2d 682; *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (providing that "[t]he supreme court is the only state court with the power to overrule, modify, or withdraw language from a previous supreme court case").

testimony that the device emitted an odor of marijuana, or that it appeared as though it had been used to vape liquid THC.

¶35     The State contends that, based on Moore's admission that he consumed CBD, the officers could have reasonably inferred that Moore also vapes THC.  But the State has pointed to no evidence in the record that would support such an inference, and we conclude that such an inference is objectively unreasonable.  *See generally* **State v. Jennings**, No. 2019AP1539-CR, unpublished slip op. ¶27 (WI App Dec. 22, 2020) (discussing unreasonable inferences).[12]  Neither officer testified to having knowledge, based on their training and experience, that people who consume CBD are more likely to consume THC, and the State has not explained why it would be reasonable to draw that inference regardless of the lack of factual support.

¶36     The State also suggests that, because Moore did not respond to Abel's initial question about whether the vaping device was used for THC, the officers could reasonably infer that Moore used the device to vape THC.  Yet the circuit court did not make this inference, and it is not supported by the video footage.  Based on our independent review of Scheppler's body camera footage, it is just as likely that Moore simply did not hear the question when first posed.

¶37     Finally, the State suggests that Abel's observation that Moore hit the curb as he pulled to a stop, coupled with the odor of a substance that might have been marijuana and his possession of the vaping device, would have led the officers to reasonably suspect that Moore was impaired.  We disagree.  That Moore hit the curb as he pulled over was an isolated event, not part of any alleged pattern of bad

---

[12] We cite this unpublished opinion for its persuasive value consistent with WIS. STAT. RULE 809.23(3).

or irregular driving. Further, the officers did not testify to having observed any indication that Moore was impaired, and the circuit court implicitly found that there were no signs of impairment.

¶38    For these reasons, we conclude that Moore's possession of a vaping device, the facts the officers learned about the vaping device, and Moore's alleged impairment during the traffic stop, did not supply officers with probable cause to believe a crime had occurred.

¶39    We now turn to the argument the State makes on appeal about the liquid Abel observed being thrown from Moore's vehicle. As discussed above, Abel testified that she observed "some sort of liquid fly out of the driver's side window," and further, that she observed an odorless liquid on the driver's side of the vehicle. When Abel questioned Moore about this topic during the traffic stop, Moore denied that he had thrown anything from the vehicle.

¶40    In its appellate brief, the State argues that a reasonable officer could conclude that the liquid was a prohibited substance that Moore sought to dispose of before the traffic stop. However, the State did not advance this argument during the circuit court proceedings. At best, the State merely made the generic assertion in a sur-reply brief that the liquid, and Moore's response to Abel's questioning, were "articulable facts" that could be considered in the totality of circumstances. The State failed to develop any argument about any relevant inferences that could be derived from those "articulable facts." As the circuit court explained in its written decision, the liquid Abel observed "was never shown to … bear on any question presented in [Moore's] motion."

¶41    As a general rule, a party forfeits an argument by not advancing it with clarity during the circuit court proceedings. *Schill v. Wisconsin Rapids Sch. Dist.*,

2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177; *see also **Townsend v. Massey***, 2011 WI App 160, ¶¶19-27, 338 Wis. 2d 114, 808 N.W.2d 155. The State has not advanced any argument on appeal as to why we should overlook the State's forfeiture in this case. Under these circumstances, we conclude that it would be unfair to base our decision on any potential argument by the State that Moore did not have the opportunity to attempt to rebut during the circuit court proceedings.

¶42 Accordingly, we conclude the State has not met its burden to prove that the facts available to the officers established probable cause to believe that a crime had been committed. Our conclusion renders the second analytical step in *Secrist*—whether officers were able to "link" the odor of marijuana in the vehicle to Moore—unnecessary. We therefore do not consider whether the facts known to the officers provided probable cause to believe it was Moore who committed an offense.

## CONCLUSION

¶43 In summary, we conclude that the officers lacked probable cause to arrest Moore at the time Officer Scheppler conducted a search of Moore's person. Therefore, the search of Moore was not a lawful search incident to arrest. Accordingly, the circuit court properly suppressed the evidence obtained in the search.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.